THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. RICHARD W. MILLER, JR., Defendant-Appellee.

Third District    No. 3—90—0758

Opinion filed October 4, 1991.

Joseph Navarro, State's Attorney, of Ottawa (Rita Kennedy Mertel, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

No brief filed for appellee.

JUSTICE BARRY delivered the opinion of the court:

The defendant, Richard W. Miller, Jr., was charged with driving under the influence of alcohol and improper lane usage (Ill. Rev. Stat. 1989, ch. 95½, pars. 11—501, 11—709). His driving privileges were also summarily suspended (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.1). Defendant moved to suppress his breathalyzer result

and rescind his statutory summary suspension. After the trial court granted both motions, the State appealed. We affirm.

Initially, we note that the defendant has not filed an appellee's brief. However, since the record is simple and the disputed errors can be decided without his brief, we will address the merits of the appeal. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.

At the hearing on defendant's motions to suppress the breathalyzer result and rescind the summary suspension, Officer Rolando Matos testified that on the evening of March 31, 1990, he was on patrol. Around 12:45 a.m., he saw the defendant's vehicle weaving across the center and shoulder lines on Route 71. On Matos' signal, the defendant pulled over to the side of the road. As the defendant exited his car and walked toward Matos, he staggered, waved his arms, and shouted. When they began talking, Matos noted that the defendant's speech was slurred and he smelled of alcohol. Matos asked him if he had been drinking, and the defendant admitted that he had.

Matos had the defendant perform four field sobriety tests. The only test the defendant performed properly was the finger-to-nose test. Matos then arrested him for driving under the influence of alcohol and transported him to the county jail.

Matos further testified that he was a certified breathalyzer operator. After he read the defendant the standard motorist's warning (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.1(c)), he explained that there would be a 20-minute waiting period before he administered the breathalyzer test. He instructed the defendant that during that time he could not eat, drink, smoke, or put anything else in his mouth. As Matos waited for the time to pass, he did paperwork and spoke to the deputies and bailiffs. According to Matos, defendant did not have anything in his mouth during that time.

The defendant testified that he had drunk six or eight beers that evening. He denied crossing the center or shoulder lines prior to being pulled over. He also said that he did not stagger when he walked back to the police car, although he admitted slipping on the edge of the blacktop. He did poorly on the sobriety tests because he was standing on gravel and he had poor balance because of a prior leg injury. He said his eyes were bloodshot because he had worked around diesel fumes that day.

The defendant further testified that after being arrested, he was taken to jail. Matos read him the motorist's warning, which he signed. While the defendant waited to take the breathalyzer test,

Matos did paperwork and was in and out of the room. Defendant said that Matos never told him not to smoke, drink, or eat. Defendant stated that he had Copenhagen snuff in his mouth during the entire waiting period. Immediately before blowing into the breathalyzer, he swallowed the tobacco.

The court took judicial notice of the Department of Public Health standards for administering a breathalyzer test. The requirements include the following:

"Continuous observation of the subject for at least twenty (20) minutes prior to collection of the breath specimen, during which period the subject must not have ingested alcohol, food, drink, regurgitated, vomited or smoked." 77 Ill. Adm. Code 510.60(a)(1985).

After the defendant rested, the State recalled Matos to the witness stand. He testified that he did not leave the defendant unattended during the waiting period. He admitted that he did not ask the defendant to open his mouth, nor did he scrape the defendant's mouth. Although he did not detect an odor of tobacco on the defendant, he found a tin of tobacco in his back pocket.

The trial judge found that the defendant had tobacco in his mouth during the 20-minute waiting period. Accordingly, he ruled that the test was invalid and rescinded the statutory summary suspension and suppressed the breathalyzer result.

■■ On appeal, the State concedes that noncompliance with the Department of Public Health regulations may serve as a basis for suppressing a breathalyzer result in DUI prosecutions and summary suspension hearings. (See *People v. Hamilton* (1987), 118 Ill. 2d 153, 514 N.E.2d 965.) It argues, however, that the trial court erred in granting the motions to rescind the summary suspension and suppress evidence. It first contends that the court's finding that the defendant had tobacco in his mouth was not supported by the evidence.

Initially, we note that in a statutory summary suspension hearing, the burden is on the defendant to present a *prima facie* case that the test result was unreliable. If he does so, the burden shifts to the State to show that the result was accurate. (*People v. Orth* (1988), 124 Ill. 2d 326, 530 N.E.2d 210.) The burden of proof on a motion to suppress is also on the movant. (*People v. Wright* (1969), 42 Ill. 2d 457, 248 N.E.2d 78.) On appeal, this court cannot reverse the trial court's finding on either motion unless it was manifestly erroneous. *People v. Wireman* (1989), 181 Ill. App. 3d 385, 536

N.E.2d 1346; *People v. Hunt* (1989), 188 Ill. App. 3d 359, 544 N.E.2d 118.

In the instant case, the parties presented conflicting accounts regarding whether the defendant had tobacco in his mouth prior to the test. The trial court was in a better position to judge the witnesses' credibility and elected to believe the defendant. Where there is a conflict in the testimony and the trial court finds one party more credible, its finding will be affirmed unless the party's testimony was inherently unreasonable or impossible. (See *People v. Bertsch* (1989), 183 Ill. App. 3d 23, 538 N.E.2d 1306.) Applying this standard, we affirm the court's finding that the defendant had tobacco in his mouth during the waiting period.

■ The State next argues that chewing or swallowing tobacco does not violate Department of Public Health regulations because it does not constitute smoking or the ingestion of food or drink.

We disagree. Although it may be debated whether chewing or swallowing tobacco most closely resembles either smoking, eating, or drinking, the clear import of the rule is to prohibit the ingestion of organic matter. Since chewing or swallowing tobacco constitutes such activity, we find that it violates the regulations.

■ Lastly, the State argues that the defendant had the burden of showing that chewing or swallowing tobacco would affect a breathalyzer result. This, the State argues, defendant failed to prove. The State relies on *People v. Bertsch* (1989), 183 Ill. App. 3d 23, 538 N.E.2d 1306, and the law of the State of Minnesota (see *Pasek v. Commissioner of Public Safety* (Minn. App. 1986), 383 N.W.2d 1, and *Johnson v. Commissioner of Public Safety* (Minn. App. 1986), 392 N.W.2d 359).

In *Bertsch*, the Second District Appellate Court affirmed the trial court's ruling rescinding the summary suspension of defendant's driver's license. The trial court had ruled that the breathalyzer exam had not been given in accordance with the Department of Public Health regulations. The trial court found that the officer administering the test had not in fact kept defendant under observation for the required 20-minute period and that defendant said he had belched during the waiting period. The trial court noted that belching, like vomiting, would "queer" the test results. The testing officer had conceded as much. On appeal, the court affirmed the trial court's factual findings that the officer had not kept defendant under continuous observation pursuant to Public Health regulations and that belching could have skewed the test results. The court spe-

cifically declined to rule, however, that belching was legally equivalent to regurgitation for purposes of section 510.60(a).

We find *Bertsch* and the other belching cases (*e.g., People v. Johnson* (1986), 148 Ill. App. 3d 4, 499 N.E.2d 66; *People v. Crawford* (1974), 23 Ill. App. 3d 398, 318 N.E.2d 743) distinguishable from this case because we find that chewing and swallowing tobacco, unlike belching, is the type of activity directly proscribed by section 510.60(a). The court in *Hamilton* (118 Ill. 2d at 160, 514 N.E.2d at 969, citing *People v. Emrich* (1986), 113 Ill. 2d 343, 498 N.E.2d 1140) held that noncompliance with the Public Health regulations invalidates the test results and renders them inadmissible. In other words, once defendant establishes noncompliance, it is not defendant's burden to further prove that the test results were in fact affected by prohibited conduct. Thus, even though the reviewing court in *Bertsch* relied in part upon proof that the test results in that case were skewed in fact by conduct not directly prohibited by the Public Health regulations, the lack of such factual foundation in this case is not ground for reversing the trial court's order rescinding defendant's summary suspension and suppressing the test results.

Similarly, we are not convinced that the rule set forth by the Minnesota Court of Appeals would apply here. In *Johnson,* the parties did not dispute that chewing tobacco *could* affect an intoxilyzer test result. (*Cf. Pasek,* 383 N.W.2d 1 (wherein the intoxilyzer operator testified that chewing tobacco did not affect test results).) Johnson had had chewing tobacco in his mouth until about 13 minutes before the intoxilyzer test was administered. The applicable regulations required that the defendant be under continuous observation (presumably without eating, drinking, smoking, chewing, etc.) for between 15 and 20 minutes immediately before the test. The trial court granted defendant's motion to rescind the revocation of his driver's license solely on the ground that the operator had not complied strictly with the 15- to 20-minute observation requirement.

On appeal, the court ruled that, although strict compliance with the State's regulations for administering intoxilyzer tests was preferable, a showing of noncompliance did not *per se* invalidate the test results. The court ruled that the proponent of the intoxilyzer (the Commissioner of Public Safety) had to make a *prima facie* showing in an implied consent hearing that the test was valid. Then, the defendant is given an opportunity to show that the administration of the test failed to comply with applicable regulations *and* that such noncompliance in fact tainted the test results. The

operator in *Johnson* testified that to his knowledge defendant's chewing tobacco had not affected the test results. This testimony was unrebutted. Based on Minnesota precedent holding that test results could be admitted upon proof of substantial compliance with regulations coupled with "sufficient indicia of reliability" of the blood/alcohol test (*Johnson v. Commissioner of Public Safety* (Minn. App. 1986), 392 N.W.2d 359, 362, citing *Kooi v. Commissioner of Public Safety* (Minn. App. 1985), 363 N.W.2d 487), the court reversed the trial court's order of rescission.

*Johnson* and *Pasek* are snuff cases, but they have no precedential value for our purposes today. The law of Minnesota is procedurally and substantively inapposite to Illinois. Unlike Minnesota, the law of Illinois places the initial burden of proof on the motorist requesting rescission of a summary suspension. After defendant makes a *prima facie* case for rescission, the burden shifts to the State to produce evidence in rebuttal. (*Orth*, 124 Ill. 2d 326, 530 N.E.2d 210.) More particularly, as indicated above, our supreme court ruled in *Emrich* and *Hamilton* that, upon a defendant's *prima facie* showing of noncompliance with Illinois Public Health regulations, the breathalyzer test is presumed invalid and inadmissible. The burden of rebutting that presumption with proof of validity in fact is on the State.

In this case, defendant made a *prima facie* case for rescission pursuant to *Hamilton*, and the State introduced no evidence tending to prove in fact that defendant's chewing tobacco and swallowing it immediately before taking the breathalyzer test did not affect the test result. The only factual issue presented to the court concerned whether defendant had the material in his mouth during the observation period. The court found that he did. Since the presumption of invalidity of the breathalyzer test result was not directly challenged by the State, defendant had no occasion to produce further evidence that it was invalid in fact. Accordingly, we hold that the trial court did not err in rescinding defendant's summary suspension and suppressing the results of his breathalyzer test.

The judgment of the circuit court of La Salle County is affirmed.

Affirmed.

McCUSKEY and GORMAN, JJ., concur.