THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROGER W. BERGMAN, Defendant-Appellant.

Fifth District   No. 5—92—0556

Opinion filed November 23, 1993.

Andy Scharf, of Litchfield, for appellant.

Kathryn Dobrinic, State's Attorney, of Hillsboro (Norbert J. Goetten, Stephen E. Norris, and Debra A. Buchman, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WELCH delivered the opinion of the court:

Roger W. Bergman appeals from an order of the circuit court of Montgomery County, entered July 24, 1992, denying his petition to rescind the summary suspension of his driver's license based on his driving with a blood-alcohol concentration greater than .10. On appeal, appellant argues that the trial court erred in finding that the State trooper administering the breathalyzer test complied with the standard set by the Department of Public Health that the driver be continuously observed for at least 20 minutes prior to collection of the breath specimen, and that the trial court erred in finding that appellant's ingestion of Certs breath mints just prior to the taking of the breathalyzer test did not render unreliable and invalidate said test. We will set forth only those facts necessary for resolution of these two issues.

At the hearing on appellant's petition, held July 21 and 24, 1992, appellant called the arresting officer, State Trooper Charles Leach, who also administered the breathalyzer test to appellant. Leach testified that, after taking appellant into custody, they arrived at the police station at 2:30 a.m. At this time, Leach began the 20-minute observation period prior to administering the breathalyzer test. Just prior to reading to appellant the "Warning to Motorist" at 2:47 a.m.,

Leach left the room to pick up some paperwork. Leach was out of the room for no more than one minute. After being read the "Warning to Motorist," appellant indicated that he did not want to submit to the test. After some further brief discussion, appellant consented to the test.

At this point, appellant's wife arrived at the police station. Leach could not remember leaving the room to speak with appellant's wife. It was possible that Leach did go into the hallway to speak with appellant's wife. Leach was satisfied that appellant had at all times remained within his line of sight during the 20-minute observation period. When Leach left the room to pick up paperwork, he was able to keep appellant in his line of sight. He could see the side of appellant's face and would have seen if appellant had lifted his hands to his face. Appellant was handcuffed with his hands in front. Leach admitted that during the 20-minute period he did do some paperwork and moved around the room, but appellant remained in his line of sight at all times.

Appellant's wife, Rebecca Bergman, testified that she arrived at the police station at 2:45 or 2:50 a.m. in response to appellant's telephone call. After a minute, Trooper Leach came into the waiting room to speak with Rebecca and stood facing her. Rebecca did not believe that Leach could have seen appellant from where he was standing. Leach talked to her for one minute. After Leach returned to the room with appellant, Rebecca heard him tell appellant to get ready to take the test.

Appellant testified that he arrived at the police station at 2:30 a.m. Appellant and Leach went into the room containing the breathalyzer machine. Leach left this room twice, the first time after approximately 15 minutes. Leach went across the hall with some paperwork and was gone for a minute or two. Appellant turned his head and looked out the door and could not see Leach. Appellant was read the "Warning to Motorist" at 2:47 a.m. and indicated that he did not want to take the test. Appellant changed his mind and agreed to take the test.

Appellant further testified that when his wife arrived at the station, Leach left the room to talk with her. Leach was gone for a couple of minutes. During this time, appellant reached into his shirt pocket where he had some loose Certs breath mints and put them in his mouth. He thought he put three mints in his mouth and that two remained in his mouth at the time he took the breathalyzer test. Leach never asked if appellant had anything in his mouth and never looked in appellant's mouth. Appellant demonstrated in the courtroom

while handcuffed that he was able to reach into his shirt pocket, retrieve mints, and place them in his mouth. The court stated that this did require noticeable movement by appellant.

State Trooper Thomas McCaslin testified as an expert witness for the State. He testified that he is assigned to the breath analysis section of the Illinois State Police and that his job duties include inspecting breathalyzers, instructing in the use of breathalyzers, and testifying in court.

McCaslin testified that the list of ingredients on a wrapper of Certs mints does not include alcohol. McCaslin testified that tests had been done on the breathalyzer using various substances such as Binaca and Listerine, both of which contain an alcohol by-product. Both of these substances give a reading of alcohol on the breathalyzer. Halls cough drops do not give a reading of alcohol on the breathalyzer. Certain brands of cigarettes which have been tested do not give a reading of alcohol. McCaslin concluded that substances which contain no alcohol would not give a reading of alcohol on the breathalyzer if ingested. McCaslin opined that ingesting a Certs breath mint would not result in a reading of alcohol on the breathalyzer. McCaslin was of the opinion that the regulation prohibits the ingestion of any food not because all foods will affect the breathalyzer result but because to test and list all foods which would affect the result would be impracticable.

Trooper Leach was recalled to testify. He stated that, after contemplating the events of that evening, he was now certain that he did not leave the room to speak with appellant's wife prior to appellant being administered the breathalyzer. Leach walked out to speak with appellant's wife after the breathalyzer had been administered to appellant. He still kept appellant in his line of sight because appellant was handcuffed and was in custody. When Leach returned to the room with appellant, he closed the door behind him so that appellant's wife could not hear their conversation. Leach never observed appellant take anything out of his pocket, he did not observe any Certs breath mints, and he did not find any mints when he searched appellant. He testified, however, that he could have overlooked breath mints in the search because he was only searching for possible weapons. Leach did not smell Certs breath mints on appellant's breath. When Leach left the room to pick up paperwork, he was only five or six feet away from appellant and appellant remained within his line of sight and his peripheral vision.

After hearing closing argument, the court pronounced its ruling. The court recognized that, to a large extent, the determination of the

case rested on its finding as to credibility. The court concluded that Trooper Leach did maintain the 20-minute observation period by keeping appellant at all times within his peripheral vision and hearing. The court also found that, even with the 20-minute observation period intact, it was possible for appellant to have placed the breath mints in his mouth without Leach having seen it. The court stated, "Although I'm not convinced that this happened, giving Mr. Bergman the benefit of the doubt, I'm going to find that he did actually take one or two Certs, whatever he testified to." However, the court also found that the unrebutted expert testimony was that the ingestion of Certs breath mints would have had absolutely no effect on the breathalyzer test. The court ruled, therefore, that the breathalyzer test procedure was proper and the test results were reliable and valid. Appellant's petition to rescind the summary suspension was denied.

■ Section 11—501.2 of the Illinois Vehicle Code requires that, to be considered valid and admissible in court, any chemical analysis of a person's blood or breath must be performed according to standards promulgated by the Department of Public Health. (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.2.) One of those standards requires

> "[c]ontinuous observation of the subject for at least twenty (20) minutes prior to collection of the breath specimen, during which period the subject must not have ingested alcohol, food, drink, regurgitated, vomited or smoked." (77 Ill. Adm. Code §510.60 (1985).)

It is this standard which appellant argues was not followed in the case at bar.

With respect to the 20-minute observation period, appellant argues that we must find as a matter of law that, where the appellant was able to ingest three Certs breath mints without being seen by Trooper Leach, the 20-minute observation period was not maintained. Compliance with the standards of the Department of Public Health, including the 20-minute observation period, is mandatory, and the admissibility of alcohol test results will be denied for failure to comply. (*In re Summary Suspension of Driver's License of Ramos* (1987), 155 Ill. App. 3d 374, 376, 508 N.E.2d 484, 486.) It appears, however, that, at least with respect to the 20-minute observation period, only substantial and not strict compliance is required. *Ramos*, 155 Ill. App. 3d at 376, 508 N.E.2d at 486.

In *Ramos*, we held that the 20-minute observation period was maintained despite the trooper having to spend some six minutes resetting the breathalyzer machine, during which time his attention was primarily focused on the machine and not on the defendant, although

the defendant was within his peripheral vision. While the trooper did not stand and stare at the defendant while resetting the machine, he did have occasion to see defendant during this time as defendant was seated five to seven feet away from the machine. This court found no substantial error such that the test results should be stricken because the six minutes during which the trooper was concentrating on resetting the machine, rather than simply standing and staring at the defendant, do not indicate a serious failure to comply with the required standard. During these six minutes, the defendant was observed periodically as the trooper moved about the machine and was constantly within the peripheral vision of the trooper. This constituted substantial compliance with the standard.

■ Similarly, in the instant case, although Trooper Leach briefly left the room twice during the 20-minute observation period, he testified that at all times appellant remained within his line of sight and within his peripheral vision. Even when Leach went to speak with appellant's wife, appellant was no more than 12 feet from Leach and was still within Leach's line of vision and peripheral vision. We think this is sufficient to demonstrate substantial compliance with the Department of Public Health standard requiring a 20-minute observation period despite the fact that Leach did not see appellant ingest the Certs breath mints.

Appellant argues, however, that this case is distinguishable from *Ramos* in that in this case the appellant actually did ingest some food during the 20-minute observation period, proving conclusively that the observation period was not maintained and the standard was not complied with. Appellant is correct that in *Ramos* we explicitly found that the defendant had not regurgitated, vomited, or smoked during the 20-minute period and he did not have access to food or water during the observation period. However, we do not agree with appellant that the fact that appellant in the instant case did ingest the breath mints proves conclusively that the 20-minute observation period was not maintained.

The purpose of the 20-minute observation period is to ensure that the defendant does not regurgitate, vomit, smoke, or ingest anything which will render the breathalyzer test results unreliable. (*People v. Neville* (1987), 151 Ill. App. 3d 679, 681, 503 N.E.2d 387, 389.) Here, Trooper Leach substantially complied with the observation rule by keeping appellant in his line of sight and peripheral vision continuously for 20 minutes, and this is at least sufficient to prove that appellant did not regurgitate, vomit, smoke, or drink anything and did not ingest anything other than the Certs breath mints during the 20-

minute observation period. The trial court found that appellant could have retrieved the mints from his pocket and put them in his mouth in 10 seconds or less and that this could have occurred while Leach's back was momentarily turned or his attention momentarily diverted. It is at least highly probable that appellant would have acted as surreptitiously as possible in ingesting the mints. We believe, as did the trial court, that Leach substantially complied with the standard by observing appellant continuously for 20 minutes and that this observation was at least sufficient to prove that nothing other than the breath mints had been ingested and therefore served its purpose even though appellant was able to surreptitiously ingest three Certs breath mints during the observation period. The ingestion of these mints simply does not establish as a matter of law that the 20-minute observation period was not maintained. The trial court's finding that the 20-minute observation period was maintained is not against the weight of the evidence.

While recognizing that the determination of the credibility of the witnesses is within the province of the trier of fact (*People v. Zator* (1991), 209 Ill. App. 3d 322, 328, 568 N.E.2d 162, 167), appellant also argues that Trooper Leach's testimony that he kept appellant in his line of vision during the 20-minute observation period despite having twice left the room was not credible and should not have been accepted by the trial court. Appellant is correct that the determination of the credibility of the witnesses is left to the trial court, who is in a better position to observe and judge. (*People v. Miller* (1991), 219 Ill. App. 3d 246, 249, 583 N.E.2d 10, 12.) The trial court's finding of credibility will not be disturbed unless the testimony was inherently unreasonable or impossible. (*Miller*, 219 Ill. App. 3d at 249, 583 N.E.2d at 12.) Leach's testimony was neither inherently unreasonable nor impossible, and we will not disturb the trial court's finding in this regard.

■ Appellant also argues that the trial court erred in finding that the ingestion of Certs breath mints just prior to the taking of the breathalyzer test did not invalidate the test. Again, the Department of Public Health standard provides that, during the 20-minute observation period, "the subject must not have ingested alcohol, food, drink, regurgitated, vomited, or smoked." (77 Ill. Adm. Code §510.60 (1985).) Appellant argues that this standard prohibits the ingestion of any and all food, that Certs breath mints constitute food, and that absent compliance with the standards of the Department of Public Health, breathalyzer test results will be considered invalid and hence

inadmissible. *People v. Hamilton* (1987), 118 Ill. 2d 153, 160, 514 N.E.2d 965, 969.

We find *People v. Miller* (1991), 219 Ill. App. 3d 246, 583 N.E.2d 10, to be helpful to our resolution of this issue. In that case, the defendant moved to suppress his breathalyzer result and rescind his statutory summary suspension because he had had chewing tobacco or snuff in his mouth throughout the 20-minute observation period. Immediately before blowing into the breathalyzer, he swallowed the tobacco. After hearing evidence, the trial court found that defendant had had tobacco in his mouth during the 20-minute observation period, declared the breathalyzer test invalid, and rescinded the statutory summary suspension and suppressed the results of the breathalyzer test.

This court affirmed the trial court, finding that chewing or swallowing tobacco during the 20-minute observation period does violate the Department of Public Health standard prohibiting the ingestion of any food or drink during the 20-minute observation period. We pointed out that on a petition to rescind a statutory summary suspension, the motorist has the initial burden of proof. After the motorist makes a *prima facie* case for rescission, the burden shifts to the State to produce evidence in rebuttal. Upon a defendant's *prima facie* showing of noncompliance with Illinois Public Health regulations, the breathalyzer test is presumed invalid and inadmissible. The burden of rebutting that presumption with proof of validity then rests on the State.

In *Miller*, this court found that the defendant made a *prima facie* case for rescission based on noncompliance with Department of Public Health standards, and the State introduced no evidence tending to prove in fact that defendant's chewing tobacco and swallowing it immediately before taking the breathalyzer test did not affect the test result. Thus, the trial court properly found the breathalyzer test to be invalid and suppressed its results and rescinded the defendant's statutory summary suspension.

We think *Miller* makes clear that merely showing noncompliance with the Department of Public Health standards establishes only a *prima facie* case of invalidity which may be rebutted by evidence that, despite this noncompliance, the breathalyzer test result is still reliable and therefore still valid and admissible. Thus, establishing noncompliance does not conclusively invalidate the breathalyzer test result rendering it inadmissible.

We believe this conclusion is further supported by cases which hold that the purpose of the particular Department of Public Health

standard at issue here is merely to ensure the reliability and accuracy of the breathalyzer test result by ensuring that nothing containing alcohol has entered the motorist's mouth, either through vomiting or ingestion, that would change the result of the breathalyzer test. See, e.g., *People v. Neville* (1987), 151 Ill. App. 3d 679, 681, 503 N.E.2d 387, 389.

In the instant case, the appellant successfully presented a *prima facie* case that the breathalyzer test was not performed in compliance with Department of Public Health standards because appellant ingested three Certs breath mints just prior to blowing into the breathalyzer machine and in fact had two mints in his mouth at the time he blew. This was sufficient to shift the burden of proof to the State to show that, despite this noncompliance, the result of the breathalyzer test was still reliable and was not affected by the noncompliance and that the test result is therefore valid and admissible. In the instant case, unlike *Miller*, the State successfully carried this burden.

Illinois State Trooper McCaslin testified that, in his expert opinion, the ingestion of a substance containing no alcohol by-product, such as a Certs breath mint, would not affect the result of the breathalyzer test. The trial court accepted this testimony. Furthermore, this testimony remained unrebutted by appellant. Accordingly, under *Miller*, the trial court's finding that appellant's ingestion of Certs breath mints just prior to the breathalyzer test did not invalidate the test was not against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of Montgomery County is affirmed.

Affirmed.

GOLDENHERSH and RARICK, JJ., concur.