NOTICE
Decision filed 01/31/18. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2018 IL App (5th) 160330

NO. 5-16-0330

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Randolph County. |
| | ) | |
| v. | ) | No. 16-DT-24 |
| | ) | |
| THERASHIA E. ERNSTING, | ) | Honorable |
| | ) | Eugene E. Gross, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE OVERSTREET delivered the judgment of the court, with opinion.
Justices Welch and Moore concurred in the judgment and opinion.

**OPINION**

¶ 1     After she was arrested for driving under the influence of alcohol (DUI), the defendant, Therashia E. Ernsting, submitted to a breath-alcohol test that showed she had a blood-alcohol concentration (BAC) of 0.215. Arguing that the test results were unreliable, the defendant subsequently filed a motion to suppress the results and a petition to rescind the statutory summary suspension of her driving privileges. Following a hearing, the trial court granted the defendant's motion and petition. The State appeals from the trial court's judgment. We affirm.

¶ 2                                    BACKGROUND

¶ 3     On May 7, 2016, at approximately 11 p.m., the defendant crashed her 2011 Chevrolet Camaro into an unoccupied pickup truck that was parked along a street near her home in

1

Steeleville. The defendant's dog was riding with her at the time, and the impact of the collision caused the car's airbags to deploy. At the scene of the accident, the defendant stated that she did not require medical treatment and that her dog had distracted her driving. She exhibited signs of alcohol impairment, however, and failed multiple field sobriety tests. As a result, she was arrested and charged with DUI (625 ILCS 5/11-501(a)(2) (West 2016)) and was transported to the Randolph County jail for the administration of a breath-alcohol test.

¶ 4    The defendant's breath-alcohol test was administered by Randolph County Sheriff's Deputy Kyle Colvis, using an Intox EC/IR II breath-test machine. The testing procedure was video recorded, but the recording has no audio. After the defendant's first attempt to provide a sufficient breath sample failed because she inserted the machine's mouthpiece too far into her mouth, Colvis removed the mouthpiece with his right hand, purged the machine, and then reinserted the mouthpiece so that the defendant could try again. The defendant's second attempt was successful, and the machine indicated that her BAC was 0.215. She was thus charged with operating her vehicle while her BAC was 0.08 or more (id. § 11-501(a)(1)).

¶ 5    On May 23, 2016, after receiving notice that as of June 23, 2016, her driving privileges would be summarily suspended by statute (see id. § 11-501.1), the defendant filed a petition to rescind the statutory summary suspension. The defendant's petition generally suggested, among other things, that the results of her breath-alcohol test were unreliable and that the test had not been administered in compliance with approved procedures.

¶ 6    On June 9, 2016, the defendant filed a motion to suppress the results of her breath-alcohol test, again suggesting that the results were unreliable and that the test had not been administered in compliance with approved procedures. The defendant's motion specifically alleged, among other things, that when her car's airbags had deployed, she had "sustained an

2

injury to her mouth which caused a cut and, therefore, bleeding, in the inside of her mouth." The motion further alleged that assuming that there was any measurable amount of alcohol in the blood, the blood in the defendant's mouth would have materially affected the reliability of the test results.

¶ 7    On June 23, 2016, June 29, 2016, and July 27, 2016, the cause proceeded to a joint hearing on the defendant's motion to suppress and petition to rescind. Over the course of the hearing, the defendant presented the following evidence.

¶ 8    Colvis was called as an adverse witness for the defense. Colvis testified that he was certified by the Illinois State Police to administer breath-alcohol tests using the Intox EC/IR II breath-test machine. Colvis acknowledged that the airbags in the defendant's car had deployed when the car struck the parked truck and that a deploying airbag can result in minor facial injuries. Identifying a document admitted into evidence and referred to as a "DUI checklist," Colvis further acknowledged that he had not checked the defendant's mouth for blood prior to her performance of the breath test, even though he had been trained to check a subject's mouth prior to and after the pre-test 20-minute observation period. We note that the "DUI checklist" states, "CHECK MOUTH PRIOR TO AND AFTER 20 MINUTE PERIOD," but does not reference "foreign substances."

¶ 9    Colvis testified that he was not "familiar with the Illinois Administrative Code regulations," but he agreed that blood in a subject's mouth would be considered a "foreign substance" such as chewing gum or chewing tobacco. Colvis further agreed that if a subject had blood in the mouth, a blood or urine test would be preferable to a breath test and that he would "at least" have the subject "rinse their mouth out" and then restart the 20-minute observation period. Colvis acknowledged that the purpose of checking a subject's mouth before and after the

3

observation period is to ensure reliable test results. Colvis indicated that he was not qualified to testify regarding how blood in a subject's mouth might affect the reliability of the results of a breath-alcohol test. Colvis acknowledged that the defendant had not stumbled or staggered during the testing procedures. Colvis did not recall whether the defendant had questioned the breath-test results in his presence.

¶ 10    The defendant's husband, Dale Ernsting, testified that on May 7, 2016, he and the defendant had purchased a used Jeep in the morning and had spent the day running errands in it. Ernsting stated that the defendant had not consumed any alcoholic beverages during the day, but she had three beers during a family get-together at a restaurant later that evening. Ernsting estimated that the defendant had consumed the three beers between 5:30 p.m. and 9 p.m. Ernsting indicated that the defendant had not consumed any additional alcohol after they returned home. Ernsting testified that later that night, the defendant had called him advising that she had hit a parked vehicle down the street and that he needed to meet her and take their dog back to their house. Ernsting indicated that before the defendant had left the house with the dog, she had not been impaired by alcohol, and he had no concerns that she "might be picked up by the police because of alcohol." Ernsting testified that the defendant rarely drove with their dog in the car and that the dog had been "really hyper" that night because they had been gone all day. Ernsting testified that the morning after the accident, the defendant had complained that her face hurt and had shown him a small cut on the inside of her lip.

¶ 11    The defendant testified that on May 7, 2016, she drank three beers at the restaurant and had eaten a steak, french fries, and a side salad. The defendant testified that she drank the beers between 6 p.m. and 8:30 p.m., that she had not consumed any additional alcoholic beverages that night, and that she had not been impaired when she took her dog for a ride. The defendant

4

explained that her dog weighed 85 pounds and had been jumping around the car and licking her face. She further explained that immediately before she hit the parked truck, her dog had obstructed her vision, and she had pushed him off of her. The defendant indicated that when her car's airbags deployed, one of the bags had hit her in the face, causing a tooth to "puncture a spot on [her] lip." The defendant further indicated that the puncture wound had not been serious enough to warrant medical attention. The defendant acknowledged that she had not advised Colvis that she had cut her lip or that she had blood in her mouth. The defendant stated that after taking the breath-alcohol test, she had questioned the results as being extremely high. The defendant testified that she had difficulties performing the field sobriety tests because she had been wearing flip-flops and had recently injured one of her knees. She further testified that her red eyes and slurred speech had been caused by her head's contact with the deploying airbag.

¶ 12    Ronald Henson of Beron Consulting and Labworks testified as an expert for the defense. Henson testified that he had extensive education and experience in the area of drug and alcohol testing; that he regularly authored, lectured, and consulted on the subject; and that he had "been doing breath testing for 37 years." Henson was first certified to operate breath-test machines as a police officer in the early 1980s and, from 1988 to 1995, was a licensed breath analysis training instructor. From 1988 to 1993, he was the supervisor of the breath, blood, and urine testing program at the University of Illinois. In 1994, he obtained a master's degree with his thesis "Illinois Law Enforcement's DUI Guide," and, in 2004, he obtained a Ph.D. with a dissertation regarding drug testing in the workplace. Henson has done consulting work for various governmental agencies and has served on numerous professional advisory committees. Indicating that Henson was one of the "foremost experts" on the subject of drug and alcohol

5

testing, the trial court noted that he had previously testified as an expert witness "in practically every county" in Illinois.

¶ 13    Henson testified that he was familiar with the Intox EC/IR II breath-test machine and the factors that might affect the accuracy of its test results. Henson testified that prior to the hearing, he had interviewed the defendant and had reviewed the video of her taking the breath test at the Randolph County jail. With respect to the administration of the defendant's breath test, Henson testified that Colvis had done two things wrong.

¶ 14    Most notably, Colvis had failed to check the defendant's mouth before and after the pre-test 20-minute observation period. Stating that the defendant had reported that she had been "actively bleeding" from a cut on her inner lip, Henson explained that blood in a subject's mouth will "inflate a breath test" if the blood contains any amount of alcohol. Henson indicated that the increase in alcohol molecules caused by "blood leaking inside the mouth" disrupts the equilibrium upon which the breath test is based and will thus lead to "overreported" results. Henson stated that blood in a subject's mouth is also considered a "foreign substance." Henson indicated that a "foreign substance" is something that is not ordinarily in a subject's mouth. Henson further noted that the blood in the defendant's mouth had likely been capillary blood, which would have contained higher alcohol concentrations than her venous blood. Henson testified that had Colvis checked the defendant's mouth and observed the blood, he should have requested that she submit to a blood test.

¶ 15    Henson further testified that pursuant to "recommended procedures," Colvis should not have removed and reused the machine's mouthpiece after the defendant's initial attempt to provide a sufficient breath sample. Henson explained that Colvis should have used a new

6

mouthpiece to avoid possible contamination by any substances that might have been on his hands or by any alcohol molecules that might have been in the condensate of the used mouthpiece.

¶ 16 Henson opined that, given the blood in the defendant's mouth and Colvis's handling of the mouthpiece, the results of the defendant's breath test were not reliable within a reasonable degree of scientific certainty. Henson also testified that the defendant's appearance on the video recording of the test procedure, which was shown at the hearing, further supported his opinion. Henson indicated that the defendant's ability to walk around with "no problem" was inconsistent with a BAC reading of 0.215.

¶ 17 When cross-examined, Henson acknowledged that there were no administrative regulations governing the changing of a mouthpiece during a breath test. He further acknowledged that the regulation referencing "foreign substances" does not specify that blood is considered a foreign substance.

¶ 18 Following the presentation of the defendant's evidence, the trial court determined that the defendant had established a *prima facie* case that the results of her breath-alcohol test were unreliable. The court noted that Henson had indicated that the blood in the defendant's mouth constituted a foreign substance that would "invalidate the test." The trial court further noted that there was no need to address whether Colvis's handling of the mouthpiece would have also invalidated the test. The court subsequently observed that Henson's "main point [had been] that the blood was a contaminant." In support of its position that the results of the defendant's breath test were reliable, the State adduced the following evidence.

¶ 19 Colvis testified that when he spoke with the defendant at the accident scene, she had slurred speech, "glassy red" eyes, and a strong odor of alcohol on her breath. She also admitted that she had been drinking beer prior to the incident. Colvis testified that he had the defendant

7

perform field sobriety tests and that her difficulties with the "walk and turn test" and the "one leg stand test" had confirmed his suspicions that she had been DUI. Colvis subsequently found a cold, unopened can of beer in the defendant's car. Colvis testified that the defendant had never indicated that she had blood in her mouth and had claimed that she had not been injured in the accident. Colvis did not observe any blood on the defendant's person or on the mouthpiece she had used. Colvis indicated that when he removed the mouthpiece from the machine, he had not touched either end of it and had no contaminants on his hands. Colvis indicated that the machine had been certified as accurate on April 4, 2016, and May 19, 2016, and had been functioning properly when he administered the defendant's breath test.

¶ 20    Dion Chandler testified that he was a correctional officer at the Randolph County jail and had booked the defendant following her arrest. Chandler was also present when Colvis administered the defendant's breath test. Chandler testified that he had not observed any blood in the defendant's mouth and that she had not complained of having "anything in her mouth that she had to wash out." Chandler also opined that the defendant had been intoxicated on the night in question. Chandler acknowledged that the defendant had not been stumbling, however, and that her fine motor control "appeared to be okay." Chandler could not recall whether the defendant had indicated that she had been shocked by the results of her breath test.

¶ 21    Illinois State Police Trooper Anthony Shovan testified that he and Trooper Gary Anderton routinely tested the accuracy of breath-alcohol test machines in most of the counties south of Interstate 70. Shovan identified the logbook of Randolph County's Intox EC/IR II breath-test machine, which recorded that the machine had been certified as accurate on April 4, 2016, and May 19, 2016. Shovan testified that his job required him to attended continuing education courses. In 2015, at a training lecture held by the manufacturer of the Intox EC/IR II,

Shovan was given copies of two scientific journal articles discussing the effects that blood in a subject's mouth might have on the reliability of a breath-alcohol test. When the State moved to have the articles admitted into evidence so that Shovan could discuss their findings, the trial court properly sustained defense counsel's objections that the State was attempting to introduce inadmissible hearsay. See *Lewis v. Stoval*, 272 Ill. App. 3d 467, 470 (1995) ("In Illinois, scientific and medical treatises are hearsay and are inadmissible as proof of the statements contained therein."). Defense counsel also noted that the articles were irrelevant under the facts of the defendant's case. Shovan then testified that based on his training, blood in a subject's mouth is not a "foreign substance" under the applicable "administrative rule." On cross-examination, Shovan acknowledged that he had never been provided with "any study that deal[t] with a person with active bleeding in their mouth."

¶ 22    When arguing in support of the defendant's motion to suppress and petition to rescind, defense counsel referenced Henson's testimony that the results of the defendant's breath test were unreliable due to the presence of blood in her mouth and Colvis's improper handling of the test machine's mouthpiece. Maintaining that Henson's credentials as an expert were "beyond reproach," counsel noted that Henson had opined that the blood in the defendant's mouth was a foreign substance that had rendered the test results unreliable. Counsel further noted that Colvis had acknowledged that he had not checked the defendant's mouth as he had been trained to do and that a subject's mouth is checked to ensure reliable test results. Counsel argued that the defendant's testimony that she had a cut in her mouth was credible and that the video of her taking the breath test clearly showed that her physical abilities were inconsistent with someone with a BAC of 0.215.

9

¶ 23    In response, the State argued that the defendant had falsely claimed that she had cut her lip. The State noted that neither Colvis nor Chandler had seen "any blood in [the defendant's] mouth, on the corners of her mouth[,] or anywhere else." The State further argued that even assuming that the defendant's lip had been cut, the wound would have had to have been continuously bleeding to affect the results of the breath test. The State emphasized that the defendant had struck a parked vehicle, admitted that she had been drinking prior to the accident, failed her field sobriety tests, and "had a cold beer in her car." The State maintained that Colvis had done "everything he was supposed to do" and that the results of the defendant's breath test were reliable.

¶ 24    When pronouncing its judgment, the trial court stated that it found the defendant's testimony that there had been blood in her mouth when she took the breath test to be credible and that it believed "she had blood in her mouth." The court specifically noted, however, that it was not determining whether or not the defendant "was drunk at the time."

¶ 25    Turning to Henson's testimony, the trial court stated that it did not consider Henson's opinion regarding Colvis's handling of the mouthpiece "to be very clear or convincing" but that Henson had been "very certain about the blood in the mouth" and had "said that it was a foreign substance." The court further noted that Colvis had acknowledged that he should have checked the defendant's mouth before administering the test. The court observed that had Colvis noticed the blood in the defendant's mouth, he could have "asked for a blood draw."

¶ 26    The trial court noted that the State had not called an expert witness to refute Henson's opinion regarding how blood in a subject's mouth affects the reliability of a breath-alcohol test. The court stated that the evidence before it was that "blood is a foreign substance[,] and it affects the reliability of the test." The court thus determined that the results of the defendant's breath test

10

were unreliable and granted the defendant's motion to suppress the results and her petition to rescind the statutory summary suspension of her driving privileges. Reiterating that it was not finding that the defendant "wasn't intoxicated," the court explained that it was basing its judgment solely on the evidence that "the blood in the mouth [w]as a contaminant." The trial court later issued a written order stating that "based upon the testimony of Dr. Ronald Henson and [the] presence of blood in [the] [d]efendant's mouth[,] the test results are unreliable." The State subsequently filed a certificate of impairment and a timely notice of appeal.

¶ 27                           DISCUSSION

¶ 28    Section 1286.310 of Title 20 of the Illinois Administrative Code (Code) provides that "[p]rior to obtaining a breath analysis reading from a subject," the subject must be continuously observed for at least 20 minutes, during which "the subject shall be deprived of alcohol and foreign substances and shall not have vomited." 20 Ill. Adm. Code 1286.310(a)(1) (2004). The Code defines " '[f]oreign [s]ubstance' " as "any substance not in the subject's body when a 20-minute observation period is commenced, excluding a substance introduced due to normal breathing." 20 Ill. Adm. Code 1286.10 (2015).

¶ 29    On appeal, the State emphasizes that because the blood in the defendant's mouth was in her body when the 20-minute observation period commenced, the blood was not a "foreign substance," as defined by the Code. Suggesting that the trial court misinterpreted the Code and granted the defendant's motion to suppress and petition to rescind based solely on Henson's testimony that the blood in the defendant's mouth was a "foreign substance," the State maintains that the court's judgment was erroneous as a matter of law. We disagree.

¶ 30    On appeal from a trial court's ruling on a motion to suppress or a petition to rescind, "we apply the same bifurcated standard of review." *People v. Cielak*, 2016 IL App (2d) 150944, ¶ 6.

11

We defer to the trial court's factual findings unless they are against the manifest weight of the evidence, and we review *de novo* the court's ultimate determination as to whether the defendant is entitled to relief. *Id.* A defendant is entitled to relief where she makes a *prima facie* case that the results of her breath test are not reliable and the State fails to rebut her *prima facie* case with evidence that the results are reliable. See *People v. Graney*, 234 Ill. App. 3d 497, 503 (1992); *People v. Miller*, 219 Ill. App. 3d 246, 248 (1991). To make a *prima facie* case of unreliability, the defendant must show that (1) the breath test was not properly administered, (2) the regulations regarding the testing were violated, or (3) the results are not accurate or trustworthy. *Cielak*, 2016 IL App (2d) 150944, ¶ 7; *People v. Bulman*, 212 Ill. App. 3d 795, 801 (1991). "The trial judge's finding as to the *prima facie* case will not be overturned upon appeal unless against the manifest weight of the evidence." *People v. Orth*, 124 Ill. 2d 326, 341 (1988). For a decision to be against the manifest weight of the evidence, it must appear that a conclusion opposite to that reached by the trial judge is clearly evident. *People v. Barwig*, 334 Ill. App. 3d 738, 743 (2002).

¶ 31    At the outset, we note that the Code's definition of "foreign substance" was never before the trial court, and the court was never asked to consider it in conjunction with the evidence adduced at the hearing. The definition was merely alluded to during Henson's, Shovan's, and Colvis's testimony. Shovan stated that based on his training, blood in a subject's mouth would not be considered a "foreign substance" under the applicable "administrative rule." Henson acknowledged that the "regulation" referencing "foreign substances" did not specify that blood is a "foreign substance" but that he nevertheless considered it one. Conceding that he was not "familiar with the Illinois Administrative Code regulations," Colvis also considered blood to be a "foreign substance." We thus agree with the defendant's observation that the Code's definition of

12

"foreign substance" does not necessarily conform to the term's "common usage." See *People v. Wilhelm*, 346 Ill. App. 3d 206, 209 (2004) (indicating that a "foreign substance" is a substance that "may affect the breath test"); *Bulman*, 212 Ill. App. 3d at 799 (noting that a breath test "might be adversely affected if an individual has blood in his mouth and that blood contained alcohol"). In any event, contrary to the State's intimations on appeal, the trial court was not tasked with interpreting, or even reading, the Code's definition. *Cf. Wilhelm*, 346 Ill. App. 3d at 208 (stating that "[t]he only issue on appeal is whether the trial court erred in its interpretation of the Code"). The State's present argument is essentially a new line of attack, and "[i]t is well settled that issues not raised in the trial court are deemed waived and may not be raised for the first time on appeal." *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996).

¶ 32    Waiver aside, the State's argument on appeal ignores that Henson did not testify that the results of the defendant's breath test were unreliable merely because the blood in her mouth was a "foreign substance." He testified that due to the increase in alcohol molecules caused by blood in a subject's mouth, blood is a foreign substance that will "inflate a breath test" and lead to "overreported" results. As the trial court noted, Henson's "main point [had been] that the blood was a contaminant," and the State failed to rebut Henson's expert opinion that "blood is a foreign substance[,] and it affects the reliability of the test." Emphasizing that it was not determining whether or not the defendant had been DUI, the court further noted that it was granting her motion to suppress and petition to rescind based solely on the evidence that "the blood in the mouth [w]as a contaminant." The record thus belies the State's assertion that the trial court's judgment was based solely on Henson's testimony that the blood in the defendant's mouth was a "foreign substance." The State's argument further ignores that whether a defendant's breath test was administered in compliance with the provisions of the Code is a distinct inquiry from

13

whether the defendant's test results are ultimately reliable (see *Cielak*, 2016 IL App (2d) 150944, ¶ 7; *Barwig*, 334 Ill. App. 3d at 744; *People v. Bergman*, 253 Ill. App. 3d 369, 376 (1993); *Miller*, 219 Ill. App. 3d at 251; *People v. Bertsch*, 183 Ill. App. 3d 23, 27-28 (1989)) and that reliability "is the paramount concern" (*People v. Bonutti*, 212 Ill. 2d 182, 191 (2004)).

¶ 33     We lastly observe that the State's reliance on our decision in *People v. Van Bellehem*, 389 Ill. App. 3d 1129 (2009), is misplaced. In *Van Bellehem*, the defendant argued that the results of her breath-alcohol test were unreliable because in violation of section 1286.310, she had chewing gum in her mouth and had not been continuously observed during the pre-test 20-minute observation period. *Id.* at 1130-31. Following a hearing, although the trial court indicated that it did not believe the defendant's testimony that she had gum in her mouth, the court nevertheless granted her motion to suppress the results of her breath test, ruling that "the arresting officer should have either asked the defendant if she had anything in her mouth or asked her to open her mouth so that he could look inside." *Id.* at 1132. When reversing the trial court's judgment on appeal, we set forth several reasons why its ruling was erroneous. *Id.* at 1134-37. In *dicta*, we also noted that because the defendant had claimed that the chewing gum had been in her mouth before the 20-minute observation period had commenced, even if the trial court had accepted her testimony, "the gum would not have qualified as a foreign substance as defined in the Administrative Code." *Id.* at 1137. More importantly, however, recognizing that "when considering the foreign-substance portion of the breath-test regulation, the focus should be on proof that the reliability of the test has been affected" (*id.* at 1135), we repeatedly noted that the defendant had failed to present any evidence that the gum in her mouth might have affected the reliability of her test results (*id.* at 1132, 1135-38). We thus determined that the

14

defendant had failed to present a *prima facie* case that the results of her breath test were unreliable. *Id.* at 1136-37.

¶ 34    Here, the State intimates that *Van Bellehem* supports its argument that the trial court's judgment should be reversed. As the defendant suggests, however, other than the fact that the substance at issue does not qualify as a "foreign substance" as defined by the Code, the present case is nothing like *Van Bellehem*. In the present case, the defendant testified that she had blood in her mouth when she took the breath test, and the trial court credited her claim. She also presented unrebutted expert testimony that the blood in her mouth was a contaminant that affected the reliability of her test results, and the court accepted her expert's opinion. Thus, regardless of whether blood technically falls within the Code's definition of "foreign substance," the defendant presented a *prima facie* case that the results of her breath test were untrustworthy, and the State failed to rebut her *prima facie* case. Accordingly, we cannot conclude that the trial court's judgment was against the manifest weight of the evidence, and we reject the State's contention that the court's judgment should be reversed as a matter of law.

¶ 35                                    CONCLUSION

¶ 36    For the foregoing reasons, the trial court's judgment granting the defendant's motion to suppress and petition to rescind is hereby affirmed.


¶ 37    Affirmed.

15

2018 IL App (5th) 160330

NO. 5-16-0330

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Randolph County. |
| | ) | |
| v. | ) | No. 16-DT-24 |
| | ) | |
| THERASHIA E. ERNSTING, | ) | Honorable |
| | ) | Eugene E. Gross, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

**Opinion Filed:**         **January 31, 2018**

_____

**Justices:**       Honorable David K. Overstreet, J.

Honorable Thomas M. Welch, J., and
Honorable James R. Moore, J.,
Concur

_____

**Attorneys**      Hon. Jeremy R. Walker, State's Attorney, Randolph County Courthouse,
**for**            Chester, IL 62233; Patrick Delfino, Director, David J. Robinson, Acting
**Appellant**      Deputy Director, Sharon Shanahan, Staff Attorney, Office of the State's
                   Attorneys Appellate Prosecutor, Fifth District Office, 730 E. Illinois
                   Highway 15, Suite 2, P.O. Box 2249, Mt. Vernon, IL 62864

_____

**Attorney**       Jeffrey S. Hammel
**for**            23 South First Street
**Appellee**       Belleville, IL 62220

_____