THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. GREGORY P. SMOLINSKI, Defendant-Appellee.

Second District   No. 2—91—0036

Opinion filed October 16, 1992.

James E. Ryan, State's Attorney, of Wheaton (Barbara A. Preiner, Assistant State's Attorney, and William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Joseph M. Laraia and Kenneth D. Hubbard, both of Joseph M. Laraia & Associates, P.C., of Wheaton, for appellee.

JUSTICE DOYLE delivered the opinion of the court:

Defendant, Gregory P. Smolinski, was charged by complaint in the circuit court of Du Page County with two counts of driving under the influence of alcohol (Ill. Rev. Stat. 1989, ch. 95½, pars. 11—501(a)(1), (a)(2)). Following his arrest, defendant was notified pursuant to section 11—501.1 of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.1) of a summary suspension of his driving privileges as a result of his submission to a breathalyzer test which disclosed a blood-alcohol concentration in excess of .10. Defendant filed a petition seeking judicial review of the statutory suspension (see Ill. Rev. Stat. 1989, ch. 95½, par. 2—118.1(b)), and following a hearing on his petition, the circuit court entered its order rescinding the summary suspension. The State filed this timely appeal.

The sole issue presented for review is whether the presentation of credible testimony by defendant and his brother that he was not under the influence of alcohol is sufficient to support a *prima facie* showing for rescission of a summary suspension of driving privileges.

The following facts are relevant to our analysis. At the suspension hearing, defendant's brother, Lawrence E. Smolinski, testified that on the evening of the arrest defendant had been at Lawrence's home assisting him with a home repair project. Lawrence stated that he observed defendant consume three martinis at approximately one-hour intervals beginning at 7:30 p.m. He further stated that he did not observe anything unusual about defendant related to the consumption of alcohol, and, based upon his experience, he opined that defendant's ability to manipulate a hacksaw and hammer that evening was not impaired. Upon completion of the project, Lawrence and defendant ate a pizza, and defendant departed at approximately 11:30 p.m. Lawrence further testified that from 10:30 p.m. to 11:30 p.m. he did not observe defendant consume any additional alcohol; that he did not notice anything unusual about defendant's speech or mannerisms; that defendant's eyes and facial color appeared normal; that he observed nothing out of the ordinary about defendant's balance; and that he did not consider defendant to be under the influence of alcohol at the time of defendant's departure.

On cross-examination, Lawrence stated that he had observed defendant drink three martinis on prior occasions and he had seen some effect, but under different circumstances. He further stated that he never observed his brother having balance problems, even under the influence of alcohol. Lawrence stated that when defendant left Lawrence's house, defendant's speech was not slurred; he did not

smell alcohol on defendant's breath; and he did not get a look at defendant's eyes. Lawrence also stated that defendant's eyes were bloodshot 24 hours a day.

Defendant testified that he arrived at Lawrence's house at approximately 7:30 p.m. to assist in repairing a malfunctioning sump pump. During the course of the evening he consumed three 1- to 1½-ounce martinis. Defendant further testified that he consumed the martinis at approximately one-hour intervals beginning at 8 p.m. During the course of the work, defendant testified that he had no difficulty with his balance, dexterity or speech. After completion of the work, at approximately 10:30 p.m., he and his brother ate pizza and engaged in conversation until his departure at 11:30 p.m. Defendant denied consuming any additional alcoholic beverages during that period of time. At the time of his departure, defendant stated that he was not feeling the effects of the alcohol and that he felt his speech and balance were fine.

After leaving Lawrence's house, defendant started to drive home. As he was proceeding south on Naperville Road, he made a left-hand turn onto Butterfield Road at which time he observed red lights and pulled to the shoulder of the road. After pulling over, he pulled back into the roadway and then returned back to the shoulder realizing that a squad car was behind him. A police officer approached defendant's car and requested to see his driver's license. Defendant testified that he took his wallet from his pocket and fumbled a bit as he removed his license from the wallet. Defendant explained that because of the age of his wallet it was somewhat difficult to remove the license. The officer then inquired whether defendant had been drinking, and defendant responded in the affirmative. The officer then asked defendant to get out of his car and inquired as to his willingness to submit to a field sobriety test. After initially refusing the officer's request, defendant agreed to perform a one-leg balancing test. The officer also inquired whether defendant had any physical problems, and defendant responded that he had a pulled hamstring in his left leg. Nevertheless, defendant agreed to take the test by standing on his bad leg and raising his good leg. Defendant stated that he kept his leg raised for a couple of counts and that he dropped his leg several times touching the ground. Defendant was next provided with instructions for the performance of the heel-to-toe test. Defendant began to perform the test without being told by the officer to begin.

Shortly thereafter, another officer arrived at the scene and administered an "eye movement test" to defendant. The officer instructed defendant to follow with his eyes a pencil that the officer was holding

up. After the second officer's performance of the eye test, Officer Uhlir performed the same test again and then placed defendant under arrest. Defendant was transported to a sheriff's police station. Upon his arrival at the station, defendant testified that he submitted to a breathalyzer test. Defendant further testified that, in his opinion, he was not under the influence of alcohol and that he felt fine.

On cross-examination, defendant stated that he was experiencing pain from a hamstring problem throughout the evening, but he never complained about it while at his brother's house. He further stated that the problem also caused a limp. Defendant admitted that during the one-leg balance test he counted only to 27 instead of 30, as instructed, and that his raised leg touched the ground six times as a result of his hamstring problem.

Defendant further testified that after his arrival at the police station he received, orally and in writing, the warning to motorist information which informed him of the consequences of his taking or refusing the breathalyzer test. He further testified that he was accompanied by Officer Kuckenbecker during the entire time prior to the breathalyzer test and that he placed nothing in his mouth and did not regurgitate, belch or vomit. He further stated that he was able to view a printout and machine readout of the results of his test and that they revealed a result of .17.

On redirect examination, defendant testified that he did not feel light-headed from the time he was at Lawrence's house until the time he took the breathalyzer. After the defense rested, the State moved for a directed finding on all counts in defendant's petition. The trial court denied the motion as to all counts.

Andrew Uhlir, a police officer with the City of Wheaton, testified on direct examination that he was on routine patrol proceeding southbound on Naperville Road approaching the intersection of Danada Square Drive at approximately 11:37 p.m. on November 5, 1990, when he observed a silver Cadillac directly in front of him veer to the right and then cross approximately 6 to 12 inches over the intermittent white lines. He further observed that the silver Cadillac came within inches of making contact with a brown Buick automobile, then immediately turned on its left turn signal and veered from its location on the road to the left turn lane on Naperville Road at Route 56. After completing the left turn onto Route 56, Uhlir observed the Cadillac continue to the right of the eastbound lane onto the shoulder by two to three feet. Uhlir activated his overhead lights and then observed the vehicle pull back onto the road, immediately slow, pull to the shoulder again and then back onto the eastbound lane and then

off again, where it finally slowed to a stop on the shoulder of the road.

Uhlir approached defendant's car and requested his driver's license and proof of insurance. At that moment, he observed that defendant appeared very tired, and he detected a strong odor of alcoholic beverage emanating from defendant's mouth. He further observed that defendant's speech was slurred and that his eyes were glassy, red and bloodshot. Upon reaching into his pocket for his wallet, Uhlir observed that defendant fumbled through his wallet excessively, dropping it once, and that it took defendant "a good minute and a half" to retrieve his driver's license. When asked whether he had been drinking that evening, defendant responded he had a couple of drinks at his brother's house that evening.

Uhlir then requested that another unit report to his location, and upon its arrival he asked defendant to get out of his car. He observed defendant exit his car and then lean against it with his left hand, following the entire length of the car as he walked to the rear of the car. Uhlir asked defendant about his willingness to perform a battery of field sobriety tests, and defendant responded that he would not perform them but he would submit to a breathalyzer test. After a brief explanation of the purpose of the field tests, defendant agreed to submit to the tests.

During the one-leg test, Uhlir observed defendant swaying in a circular motion and that his raised leg touched the ground several times during the test. Before administering the test he asked defendant whether he had any medical problems with his legs, and defendant indicated that he had a slight hamstring pull in one of his legs, but that he would be able to perform the test. While the officer was instructing defendant on how to stand during the nine-step walk-and-turn test, defendant fell to his right several times, stepped off the line and his arms left his sides. Defendant then began to perform the test without being instructed to start.

Prior to his administration of the field sobriety tests, Uhlir observed Officer Kuckenbecker perform a horizontal gaze nystagmus test. After performing the test, Kuckenbecker indicated to Uhlir that the test results revealed that defendant was under the influence. Based upon his experience and observations of defendant, Uhlir opined that defendant was under the influence of alcohol, placed him under arrest and transported him to the police station. Uhlir testified that he and Kuckenbecker remained with defendant at the station until the time of the breathalyzer test.

On cross-examination, Uhlir testified that when he first observed defendant's automobile it appeared to be proceeding at or under the speed limit. He further testified that defendant did not have difficulty removing his wallet from his pants pocket and that defendant's speech was not "mush-mouthed" or "mumbled" at the time he confronted defendant after pulling him over.

James Kuckenbecker, a police officer with the City of Wheaton, testified that he was a trained breathalyzer operator and that he had administered approximately 100 breath tests in the previous two years. During Kuckenbecker's testimony, the court took judicial notice of the Department of Public Health standards and that the breathalyzer, an Intoximeter 3000, was an approved instrument for the administration of breath tests. The prosecutor also requested Kuckenbecker to read an entry made in the logbook that accompanied the breathalyzer. Defense counsel's hearsay objection to the prosecutor's request was sustained, but the court reserved its ruling as to admissibility of the document. Kuckenbecker was permitted to testify about testing the machine generally. He also pointed to a portion of the logbook where copies of the machine certification decals were kept and testified that, at the time of defendant's test, a similar decal was affixed to the breathalyzer. He further testified that, based upon the fact that the certification decal was affixed to the machine, it would indicate to him that the machine would have rendered a true and accurate result on the date of defendant's breath test. Kuckenbecker opined that on the date of defendant's examination the breathalyzer was operating properly.

Kuckenbecker further testified that he observed defendant for 20 minutes prior to the test and that he did not observe him eat, drink, smoke, regurgitate or belch. He then started the machine, observed the machine purge itself, and then instructed defendant to blow into the attached mouthpiece. Kuckenbecker also identified an exact printout of the ticket that the machine printed the night of defendant's test. Over defense counsel's hearsay objection, Kuckenbecker testified that the readout on the machine was .17, which was the same as the printout.

Following Kuckenbecker's testimony, the State moved to admit into evidence several exhibits to which defense counsel objected on various grounds. In particular, defense counsel objected to all exhibits pertaining to the breathalyzer machine, the printout and the logbook because the State failed to lay a proper foundation for their admission on the basis of the business records exception to the hearsay rule. Following the argument of counsel, the trial court denied the admis-

sion of the exhibits. After further argument, the trial court concluded that based upon all the testimony presented, and the totality of the circumstances, the officer had reasonable grounds to stop the defendant's vehicle. The court further concluded, however, that there was insufficient evidence to establish that the breathalyzer unit was properly tested for accuracy and that it was working on the date in question. On that basis alone, the court entered its order rescinding the summary suspension. The State appealed from that order.

The State's primary contention is that defendant failed to make a sufficient *prima facie* showing, within the context of a hearing to rescind a summary suspension of driving privileges, necessary to shift the burden of producing evidence to the State. The State argues that defendant's failure to produce any evidence to support his claim of inaccurate testing relieved the State of its burden to produce "witnesses to demonstrate that the machine was tested regularly and performing accurately." Defendant responds that his presentation of credible testimony that he was not under the influence of alcohol was sufficient to support a *prima facie* showing for rescission and, as a result, the burden of production was effectively shifted to the State.

In recognition of the reality that it often takes a substantial period of time for the State to prosecute impaired drivers and remove their driver's licenses, our legislature has enacted a system separate from the criminal proceeding in which a motorist's license is summarily suspended when he or she fails or refuses to submit to a chemical test. (*People v. Moore* (1990), 138 Ill. 2d 162, 166.) In order to insure against the deprivation of any due process rights a motorist might have in the retention of his or her driving privileges, the legislature has enacted a procedural mechanism whereby a motorist may file a written petition to rescind the statutory summary suspension of his or her license and receive a hearing. Ill. Rev. Stat. 1991, ch. 95½, par. 2—118.1(b); *Moore*, 138 Ill. 2d at 166-67.

■ In a hearing to rescind a summary suspension, the burden is initially placed upon the motorist to make a *prima facie* showing that the results of the chemical test are unreliable. (*People v. Orth* (1988), 124 Ill. 2d 326, 338.) Once a *prima facie* showing for rescission is made, the burden shifts to the State to come forward with evidence justifying the suspension. (*Orth*, 124 Ill. 2d at 338.) Additionally, once the motorist has made a *prima facie* case that the breath test result did not disclose a blood-alcohol concentration of .10 or more, or that the test did not accurately reflect his blood-alcohol concentration, the State can avoid rescission only by moving for the admission of the test into evidence after laying the proper foundation. (*Orth*, 124 Ill. 2d at 340.) The trial court's

finding as to the *prima facie* case will not be overturned upon review unless it is against the manifest weight of the evidence. *Orth*, 124 Ill. 2d at 341.

In support of its argument, the State relies upon *People v. Gryczkowski* (1989), 183 Ill. App. 3d 1064, as being solely dispositive of this issue. In *Gryczkowski*, a motorist was arrested for DUI as a result of his failure to perform certain field sobriety tests satisfactorily. After voluntarily submitting to a breathalyzer test which disclosed a blood-alcohol test result in excess of .10, the defendant was served with a notice of summary suspension of his driving privileges pursuant to section 11—501.1 of the Illinois Vehicle Code (see Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.1)). On appeal from a denial of his petition for rescission, defendant raised two issues: (1) whether his blood-alcohol content *at the time of his arrest* was relevant in a rescission hearing; and (2) whether defendant sustained his "burden of proof" in establishing the invalidity of the breathalyzer test result.

At the hearing, the defendant in *Gryczkowski* testified that he consumed four mixed drinks over a 1½-hour period. Approximately five minutes after leaving the tavern where he consumed the drinks, defendant was stopped by a police officer, subjected to field sobriety tests, arrested and then transported to the station where he submitted to a breathalyzer test which yielded a result in excess of .10. Defendant also offered the testimony of a food chemist who concluded that defendant's blood-alcohol content at the time of arrest would have been between .04 and .06.

On appeal, this court affirmed the trial court's decision to continue the defendant's summary suspension on two bases: (1) that a defendant's blood-alcohol content at the time he was operating his vehicle was not an issue in a summary suspension proceeding; and (2) his failure to produce "any evidence whatsoever" to support his claim of improper testing or to introduce any evidence that would call into question the accuracy of the test results.

The State argues that *Gryczkowski* stands for the proposition that the defense has the burden of showing that the breathalyzer malfunctioned, that the test results were inaccurate, or that the department failed to follow proper procedures; and that such evidence was indispensable to defendant's *prima facie* showing necessary to shift the burden of production. Defendant contends, however, that his testimony as to sobriety at the time the breathalyzer test was administered is itself sufficient to cast doubt on the test's accuracy. Although this court's decision in *Gryczkowski* rested, in part, upon the fact that defendant's claims alleging a lack of proper breathalyzer certification and the police department's failure to follow procedures were entirely unsupported by the evidence,

we decline to read our holding in *Gryczkowski* as narrowing the supreme court's clear pronouncement in *Orth* that the evidence presented by defendant may consist of any circumstance which tends to cast doubt on the test's accuracy, *including, credible testimony by the defendant that he was not under the influence of alcohol.* (See *Orth*, 124 Ill. 2d at 341.) We note that the testimony in *Gryczkowski* was solely directed to the question of whether defendant was intoxicated at the time of his operating his vehicle, which we subsequently held was irrelevant in a summary suspension hearing. Additionally, there was no testimony by the defendant in that case that at the time of the breath test he was not under the influence of alcohol.

■ In contrast to *Gryczkowski*, defense counsel here fully appreciated that the burden of making a *prima facie* showing rested upon defendant. Defendant testified, subject to the trial court's credibility determination, that, in his opinion, he was not under the influence of alcohol at the time of taking the breathalyzer test and that he felt fine. On redirect, defendant again testified that he did not feel light-headed from the time he left his brother's house until the time he took the breathalyzer test. Based upon defendant's testimony that he consumed three martinis over a four-hour period and ate pizza during the hour prior to his departure, we do not conclude that his testimony was so inherently unreasonable or impossible as to disturb the trial court's finding.

We conclude, therefore, that the trial court's implicit determination that defendant's testimony was sufficiently credible to meet his burden of making a *prima facie* showing for rescission of a summary suspension of his driving privileges was not against the manifest weight of the evidence.

■ We note that the State cursorily asserts in a single sentence of its brief that the trial court erred in its conclusion that there was insufficient evidence presented by the State that the breathalyzer was tested regularly for accuracy or that it was working properly. Because the State provides no argument or citation to authority we need not reach the issue of whether the State laid a proper foundation for the admission of the exhibits relating to the breathalyzer so as to rebut defendant's *prima facie* showing. See 134 Ill. 2d R. 341(e)(7); *Fitzpatrick v. A C F Properties Group, Inc.* (1992), 231 Ill. App. 3d 690.

For the foregoing reasons, we affirm the order of the circuit court of Du Page County rescinding the summary suspension of defendant's driving privileges.

Affirmed.

WOODWARD and GEIGER, JJ., concur.