THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. SAMMY R. EASTERLY, Defendant-Appellee.

Fifth District    No. 5—93—0537

Opinion filed June 29, 1994.

David Stanton, State's Attorney, of Pinckneyville (Norbert J. Goetten, Stephen E. Norris, and Diane L. Campbell, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Gene Gross, of Reed, Heller, Mansfield & Gross, of DuQuoin, for appellee.

JUSTICE WELCH delivered the opinion of the court:

The State appeals from the order of the circuit court of Perry

County, which granted the petition of defendant, Sammy R. Easterly, seeking rescission of the statutory summary suspension of his privilege to drive. We reverse and remand for further proceedings.

On May 8, 1993, defendant was arrested for driving under the influence of alcohol, as a result of a traffic stop for improper lane usage and failure to signal when required. He was taken to the police station, where he took a breathalyzer test which showed a blood-alcohol content (BAC) of .10. His driver's license was suspended based on this test.

On June 14, 1993, a petition to rescind the statutory summary suspension was filed. On July 27, 1993, the State and the defendant stipulated to certain facts, including that defendant's breathalyzer test registered a BAC of .10, the blank-air standard and internal calibration as reflected in the test record indicated that the breathalyzer was operating properly at the time the test was conducted, and the breathalyzer had been tested and certified on April 14, 1993. The instrument was tested with a .10 simulator solution on that date and produced two readings of .09. A copy of the relevant page of the breathalyzer log book, showing both the certification tests and defendant's breathalyzer test, was appended to the stipulation as a part thereof.

On July 27, 1993, the circuit court entered an order rescinding defendant's statutory summary suspension on his petition. The order stated:

> "[T]he intoxilyzer 3000 used to test the defendant had most previously [sic] been tested on April 14, 1993, with a .10 [s]imulator [s]olution which produced a .09 reading.
>
> Based upon the evidence, the Court believes that the defendant has met his burden that the chemical test administered failed to disclose an accurate concentration of 0.10 or more."

The State argues that the circuit court improperly rescinded defendant's statutory summary suspension because of the alleged inaccuracy of the testing. We agree.

A hearing for summary suspension of a driver's license is a civil proceeding at which the suspended motorist bears the burden of proof. (*People v. Graney* (1992), 234 Ill. App. 3d 497, 503, 599 N.E.2d 574, 580.) The motorist must meet the burden of proof by a preponderance of the evidence. (*People v. Huisinga* (1993), 242 Ill. App. 3d 418, 421, 610 N.E.2d 168, 171, *appeal denied* (1993), 151 Ill. 2d 571, 616 N.E.2d 341.) Whether a defendant has met this burden of proof is a question of fact for the trial judge, and this determination cannot be overturned on review unless it is against the manifest weight of the evidence, that is, unless an opposite conclusion is clearly evident from the record. *Huisinga*, 242 Ill. App. 3d at 421, 610 N.E.2d at 168.

The suspension of one's privilege to drive may be challenged on four grounds only: (1) whether the motorist was placed under arrest for an offense as defined in section 11—501 of the Illinois Vehicle Code (625 ILCS 5/11—501 (West 1992)) or similar ordinance; (2) whether the arresting officer had reasonable grounds to believe that the motorist was driving or in actual physical control of a motor vehicle upon the highway while under the influence; (3) whether the motorist, after being advised of the consequences, either refused to submit to testing or took a test and failed to complete it properly; or (4) whether the motorist submitted to testing after advisement and the test results revealed a BAC of 0.10 or greater. 625 ILCS 5/2—118.1 (West 1992).

Defendant herein attacked his suspension on only the fourth basis, asserting that his test result showing a BAC of 0.10 was unreliable. Elements of a *prima facie* case attacking breathalyzer test results as unreliable include whether the test was properly administered by the breathalyzer operator, whether the result was accurate and trustworthy, and whether the Department of Public Health rules were violated. (*People v. Bulman* (1991), 212 Ill. App. 3d 795, 801, 571 N.E.2d 850, 855.) Absent proof of these factors, a motorist fails to establish a *prima facie* case for rescission of his suspension. (*People v. Gryczkowski* (1989), 183 Ill. App. 3d 1064, 1070, 539 N.E.2d 1360, 1364.) Defendant's attack on the accuracy of the calibration of the breathalyzer was insufficient to cast doubt upon the reliability of the result of his BAC test and/or to shift the burden of proof to the State.

Section 11—501.2(a) of the Illinois Vehicle Code (625 ILCS 5/11—501.2(a)(1) (West 1992)) provides:

"Chemical analyses of the person's *** breath *** to be considered valid under the provisions of the Section shall have been performed according to standards promulgated by the Department of Public Health ***."

See also *People v. Kamide* (1993), 254 Ill. App. 3d 67, 71, 626 N.E.2d 337, 341.

We may take judicial notice of the regulations promulgated by the Department of Public Health concerning the proper procedures for administering breath analyses and the maintenance of accurate breath-analysis machines. (See *American Federation of State, County & Municipal Employees, Council 31, AFL-CIO v. County of Cook* (1991), 145 Ill. 2d 475, 480, 584 N.E.2d 116, 118.) Section 510.100(a) of the regulations of the Department of Public Health (77 Ill. Adm. Code § 510.100(a) (1991)) mandates:

"An instrument must be accurate within plus or minus 0.01% [*sic*] W/V [weight of alcohol in the volume of breath or certified

controlled reference sample (see 77 Ill. Adm. Code § 510.20 (1991))] to be certified. To determine accuracy of instruments, an inspector shall perform two (2) analyses on a certified controlled reference sample at least once a month at intervals not to exceed 45 days. The inspector shall record test results of his certification in the instrument log book. The original certification test results will be retained by the inspector."

Defendant asserted that because the inspector certified the breathalyzer machine as accurate with a .10 controlled reference sample which twice tested as .09, the result of his breathalyzer test, which yielded a reading of .10, was unreliable. The court erroneously agreed, finding that defendant had met his burden of proving the results inaccurate.

Initially, we note that the required range of accuracy for an instrument is plus or minus 0.01, not 0.01% as printed in the Illinois Administrative Code. (*Cf.* 14 Ill. Reg. 19052, 19055 (effective January 1, 1991) ("Section 510.100 is being amended to correct a typographical error, deleting the % symbol").) The parties in this case have not noted this discrepancy, and some courts have failed to recognize it. (See *People v. Crabbe* (1990), 195 Ill. App. 3d 163, 552 N.E.2d 19; *People v. Kilpatrick* (1991), 216 Ill. App. 3d 875, 576 N.E.2d 546.) Although the typographical error remains in the Illinois Administrative Code (77 Ill. Adm. Code § 510.100(a)(1993)), the regulation has been amended since the *Crabbe* decision, as cited above (14 Ill. Reg. 19052, 19055 (effective January 1, 1991)). Although the *Crabbe* and *Kilpatrick* courts failed to discern the typographical error in the Illinois Administrative Code or the distinction between .01 and .01%, that point is insignificant for our purposes now that the regulation has been amended, and we otherwise adopt the reasoning in *Crabbe*. The defendant in *Crabbe* argued that it was necessary for the breathalyzer to register "less than 0.01% [*sic*]" above or below the correct reading to fall within the meaning of the regulation. The court found:

"[T]he term 'within' as used [in the phrase 'accurate within plus or minus 0.01% [*sic*]'] in the Department of Public Health's regulations means 'range.' In other words, pursuant to the regulations, a breath-analysis machine which yields test sample results ranging from +0.01% [*sic*] to -0.01% [*sic*] is certifiably accurate." *Crabbe*, 195 Ill. App. 3d at 165, 552 N.E.2d at 21.

The *Crabbe* court found that where the certification of the breathalyzer produced sample test results of .09 when it was tested with controlled samples of a known alcohol concentration of .10, the defendant's breathalyzer test was properly certified as accurate. It rendered the defendant's breath test valid and admissible as the basis for refusing to rescind the defendant's statutory summary suspension.

When faced with precisely the same situation, *i.e.*, sample test results of .09 when the controlled sample was known to be 0.10, the court here found the defendant had cast doubt upon the accuracy of the result of the breathalyzer test performed when he was arrested for driving under the influence. Although the burden of proof never shifted to the State, the parties' stipulation to facts, facts which the State would otherwise have been required to prove to allow the result of the test to be admissible, was sufficient to allow the test to be admitted into evidence. (See *People v. Orth* (1988), 124 Ill. 2d 326, 340, 530 N.E.2d 210, 216-17.) That stipulation, in the absence of any evidence which cast doubt on the accuracy of the test, was sufficient to prove that the machine was certified accurate within plus or minus .01, as required by regulation and statute. Defendant never asserted that the test was improperly administered, that the operator was in some way deficient or not certified by the Department of Public Health, that the machine used was not a model approved by the Department of Public Heath, that the certification was erroneous, or that the results appearing on the "printout" sheet from the breathalyzer could not be identified as the test given to him. (See *People v. Culpepper* (1993), 254 Ill. App. 3d 215, 220-21, 625 N.E.2d 868, 872.) The stipulation was sufficient to establish nearly all of the requirements, and had the State been permitted to proceed as though the defendant had presented a case adequate to shift the burden of proof, which he did not, the State could have called the breathalyzer operator to prove those foundational requirements not embodied in the stipulation.

As the State points out, the fact that the machine underread the test sample by .01 worked to defendant's advantage. Given the calibration of the machine, which read low, defendant's BAC could not have been less than .10 and may well have been .11. Because the regulations incorporated into the statute allow for a range of readings to be considered to be accurate, we find, as did the court in *People v. Kilpatrick* (1991), 216 Ill. App. 3d 875, 882, 576 N.E.2d 546, 551, that "where a breathalyzer machine tests a certified controlled reference sample and the result is .09, .10 or .11, the machine may be considered accurate within $+/-0.01\%$ [*sic*] as required by the relevant regulation and may be properly certified."

The rescission of defendant's statutory summary suspension is reversed and this cause remanded to the circuit court for further proceedings.

Reversed and remanded.

CHAPMAN and GOLDENHERSH, JJ., concur.