(text box: 1)
 NO. 5-01-0356

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the Circuit

) Court of Franklin County.

Plaintiff-Appellee, ) 

)

v. ) Nos. 01-DT-55, 01-DT-56,

)         01-TR-887, & 01-TR-888

EARL BARWIG, ) 

) Honorable Leo T. Desmond, 

Defendant-Appellant. ) Judge, presiding.  

___________________________________________________________________________

PRESIDING JUSTICE MAAG delivered the opinion of the court:

On February 25, 2001, Earl Barwig (defendant) was cited for driving while under the influence of alcohol (625 ILCS 5/11-501(a)(2) (West 2000)), driving while having a blood-alcohol concentration in excess of .08 (625 ILCS 5/11-501(a)(1) (West 2000)), speeding (625 ILCS 5/11-601(b) (West 2000)), and improper lane usage (625 ILCS 5/11-709 (West 2000)).  Defendant filed a petition to rescind his statutory summary suspension, and a hearing was held.  The circuit court entered an order denying defendant's petition to rescind.  Additionally, defendant challenged section 7-4-8 of the Illinois Municipal Code (Municipal Code) (65 ILCS 5/7-4-8 (West 2000)) on constitutional grounds.  The circuit court declined to find a constitutional violation.  Defendant filed a timely notice of appeal.

The relevant facts are as follows.  Steve Mumbower, the arresting officer, had written a sworn report on the same date as the offense.  The report stated as follows: "I saw a truck swerving from one side of the road to the other and speeding[.]  [T]he driver then refused all field sobriety test [
sic
] and said he had 10 or 12 beers[.]  [A]lso[,] he was unable to keep his balance while standing."  The sworn report also shows a breath test result of .183.

On March 9, 2001, defendant filed a petition to rescind his statutory summary suspension.  Defendant claimed that he was not properly placed under arrest for driving under the influence of alcohol, that the arresting officer did not have reasonable grounds to believe that defendant was driving or in actual physical control of a motor vehicle while under the influence of alcohol, and that defendant was not properly warned by the arresting officer as provided in section 11-501.1 of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/11-501.1 (West 2000)).  Defendant supplemented the petition to rescind on April 3, 2001.  The supplement stated as follows:  "Defendant submitted to the requested test or tests, but the test sample of Defendant's blood[-]alcohol concentration did not indicate a blood[-]alcohol concentration of 0.08 or more[,] and the arresting officer did not follow te [
sic
] standards prescribed by Illinois law in administering the test."  On that same date, defendant also filed a motion 
in limine
 seeking to prohibit the State from using his breath test results.  Among defendant's complaints was that the logbook failed to disclose the entry of any record that defendant was tested on February 25, 2001.  We note that the breath-analysis-instrument log shows that the breath test instrument was certified accurate by Clyde Matthews on February 13, 2001.

On April 4, 2001, a hearing was held on the petition to rescind.  Mumbower, a patrol officer with the West City police department, testified that the majority of his work over the preceding two years had been with driving-under-the-influence arrests.  He stated that West City adjoins Benton.  He agreed that if he were in Benton while on patrol, he would use his radar, although he would not stop someone in Benton for speeding.  Mumbower stated that he had made driving-under-the-influence stops in Benton in the past.

Mumbower stated that on the evening in question he went to Benton looking for a suspect in an unrelated incident.  While Mumbower was in Benton, he saw defendant's truck going from one side of the road, outside his lane of traffic, to the other side.  Mumbower activated his radar and clocked defendant going 36 miles per hour.  Mumbower activated his siren and lights and eventually stopped defendant at his home.

Although defendant was asked to perform field sobriety tests, he refused.  Defendant then became argumentative.  Mumbower testified that three Benton police officers and another West City police officer were present after defendant was stopped.  Defendant was transported to the Franklin County jail, where he was given the warning to motorist and was handed a written copy of the warning so that he could review the form.  Mumbower agreed that a logbook goes with the machine, but he stated that there were no blank sheets for this instrument at the Franklin County sheriff's department.  Mumbower claimed that to the best of his recollection, defendant blew a sufficient sample the first time.  Although he stated that defendant may have blown twice into the instrument, he would have had a receipt showing that defendant had given an insufficient sample, and he did not have such a receipt.  Mumbower also stated that he never saw defendant burp or regurgitate during the 20-minute observation period.  Mumbower agreed that he had left defendant for a few seconds, but he stated that he was able to watch him while doing so.

Melvin Dixon, Benton's police chief, testified that the merit system looks at every police officer to be hired by the city and recommends to the city council whether a particular individual should be hired.  Dixon was unaware of any intergovernmental agreements between Benton and West City regarding the joint use of police forces.  He was also unaware of West City police officers patrolling in Benton.  Dixon claimed that he had no power to discipline a West City police officer.

The State moved for a "directed finding" at the conclusion of the hearing.  Defendant responded, in relevant part, by claiming that the defense had shown a problem with the breath test.  Defendant claimed that there was a risk of contamination, because Mumbower had not entered the breath test results in the logbook.  The circuit court took under advisement defendant's argument that his arrest was constitutionally invalid, but it found in favor of the State on other grounds.  Attached to defendant's trial brief is a copy of a Benton city ordinance that states that the mayor has the duty to appoint members of the board of police and fire commissioners and that the police chief is to be appointed by the mayor with the advice and consent of the city council.

The circuit court issued an order on May 24, 2001, denying the remainder of defendant's petition to rescind.  The court determined that defendant's arrest in Benton by a West City police officer was permitted pursuant to sections 7-4-7 and 7-4-8 of the Municipal Code (65 ILCS 5/7-4-7, 7-4-8 (West 2000)), because section 7-4-7 created "police districts" and section 7-4-8 gave the police within the district "full authority and power as peace officers."  The court stated that this enabled the police officers within the police district to go into any part of the police district to exercise that authority and power.  Although defendant challenged section 7-4-8 on constitutional grounds, the circuit court declined to find a constitutional violation.  Defendant filed a timely notice of appeal.

Initially, defendant contends that the circuit court erred in denying his petition to rescind his statutory summary suspension on the ground that his breath test result was unreliable.  More specifically, defendant claims that because Mumbower failed to log the "purported test or tests" in the official records of the Franklin County sheriff's department, the tests are inadmissible hearsay.  We disagree.

Mumbower testified that he personally conducted a breath test on defendant.  The results of that test were not admitted into evidence; therefore, no hearsay evidence was admitted regarding defendant's breath alcohol content.

Defendant also claims that Mumbower's testimony established that he failed to follow the guidelines and operational standards established by the Illinois Department of Public Health.  The gist of defendant's argument is that a record of defendant's breath-alcohol-content test must be maintained in a logbook.  Defendant claims that if a record of the test is not kept in the logbook, then the evidence is "unrebutted" and the "suspension of the defendant's driving privileges must be rescinded."  We disagree.

In 
People v. Orth
, 124 Ill. 2d 326, 337-38, 530 N.E.2d 210, 215 (1988), the Illinois Supreme Court stated that because a statutory summary suspension hearing is a civil action, not a criminal action, a defendant who requests the judicial rescission of a suspension bears the burden of providing, 
inter alia
, 
prima facie
 evidence of an alcohol test's unreliability.  In meeting the initial burden of proof of showing a test result's unreliability, the defendant's evidence "may consist of any circumstance which tends to cast doubt on the test's accuracy, including, but not limited to, credible testimony by the motorist that he was not in fact under the influence of alcohol."  
Orth
, 124 Ill. 2d at 341, 530 N.E.2d at 217.  A circuit court's finding regarding a 
prima facie
 case will not be reversed unless it is against the manifest weight of the evidence.  
Orth
, 124 Ill. 2d at 341, 530 N.E.2d at 217.  For a decision to be against the manifest weight of the evidence, it must appear that a conclusion opposite to that reached by the trier of fact is clearly evident.  
Rolando v. Pence
, 331 Ill. App. 3d 40, 46, 769 N.E.2d 1108, 1112 (2002).

Although defendant cites 
Orth
's five foundational requirements for the admission of breath test results, defendant fails to acknowledge that these requirements come into effect only if a defendant has made out a 
prima facie
 case for a rescission.  See 
Orth
, 124 Ill. 2d at 340, 530 N.E.2d at 216.  Hence, the real issue in this case is whether defendant did so.

Defendant focuses on four factors to support his contention that he made out a 
prima facie
 case for a rescission.  They are as follows: (1) that the officer did not enter into a logbook defendant's breath test results, (2) that the officer did not continuously observe defendant for 20 minutes prior to the administration of the breath test, (3) that defendant was given more than one breath test, and (4) that the West City police officer's arrest of defendant in Benton was unlawful.

Prima facie
 evidence has been characterized as being equivalent to the quantum of evidence required to meet the preponderance-of-the-evidence standard.  
People v. Vinson
, 184 Ill. App. 3d 33, 36, 540 N.E.2d 8, 10 (1989).  Whether defendant has met this burden of proof is a question of fact for the circuit judge, and this determination cannot be overturned on review unless it is against the manifest weight of the evidence.  
People v. Easterly
, 264 Ill. App. 3d 233, 234, 636 N.E.2d 1182, 1183 (1994).  In 
Easterly
, 264 Ill. App. 3d at 235, 636 N.E.2d at 1183, this court described what was necessary for a 
prima facie
 case attacking the accuracy of breath test results:  (1) proof that the test was not properly administered by the breathalyzer operator, (2) proof that the result was not accurate and trustworthy, or (3) proof that the Department of Public Health rules were violated.  Absent proof of any of these facts, defendant fails to establish a 
prima facie
 case for the rescission of the summary suspension.  
Easterly
, 264 Ill. App. 3d at 235, 636 N.E.2d at 1183.   Defendant focuses on Mumbower's failure to make an entry in the logbook, and defendant claims that it is a violation of the Department of Public Health rules that he failed to do so.  Defendant cites sections 510.20, 510.60, and 510.100 of Title 77 of the Illinois Administrative Code (Administrative Code) (77 Ill. Adm. Code §§510.20, 510.60, 510.100 (1999)) to support his argument.  Section 510.20 of Title 77 of the Administrative Code defines 
logbook
 as "a written business record maintained by the agency of tests performed by operators and monthly accuracy checks performed by inspectors in accordance with this Part on each instrument for use in court."  77 Ill. Adm. Code §510.20 (1999).  Section 510.100 of Title 77 of the Administrative Code, entitled "Examining and Certifying Instruments," shows the significance of the definition of 
logbook
, and it states as follows:

"a) An instrument must be accurate within plus or minus 0.01% W/V to be certified.  To determine accuracy of instruments, an inspector shall perform two analyses on a certified controlled reference sample at least once a month at intervals not to exceed 45 days.  The inspector shall record test results of his certification in the instrument logbook ***.  The original certification test results will be retained by the inspector.

* * *

c) All agencies are to have their breath analysis instrument and logbook available for examination by an inspector."  77 Ill. Adm. Code §510.100 (1999).

Additionally, section 510.60 of Title 77 of the Administrative Code (77 Ill. Adm. Code §510.60 (1999)), "Operation of Approved Breath Analysis Instruments," also has no logbook-entry requirement.  We note, however, that in defendant's reply brief, he changes his focus to a note appended to the sample logbook in section 510, appendix A, of Title 77 of the Administrative Code (77 Ill. Adm. Code §510 app. A (1999)) to demonstrate that Mumbower violated the Department of Public Health rules by his failure to make the entry in the logbook.  That note states as follows: 

"NOTE: Logbooks may be maintained in a bound volume, a ledger, a notebook, a binder, loose-leaf, etc., at the discretion of the agency.  However, the logbook must contain, at a minimum, the following data elements: Type of Instrument; Instrument Serial Number; Date; Name of the Individual Tested; Breath Analysis Result; Breath Analyzer Operator; other Required Tests (Blood, Urine); and Zero Tolerance."  77 Ill. Adm. Code §510 app. A (1999).  

This provision was added at 19 Ill. Reg. 7412, effective June 1, 1995.  Defendant fails to understand, however, that this regulation merely lists the data elements that a logbook must contain.  It does not state that the breath analysis result is a mandatory element that must be listed in order to prove that the breath test was accurate and trustworthy or that the breath test actually occurred.

In 
People v. Stein
, 212 Ill. App. 3d 164, 167, 570 N.E.2d 890, 892 (1991), this court refused to find that a defendant made a 
prima facie
 case for a rescission where the evidence showed that the breath instrument inspector failed to comply with the Vehicle Code and did not enter the certification test results into the logbook.  More specifically, in 
Stein
, the November 17, 1989, entry in the logbook stated that on that date the machine was tested with a .10 simulator solution, the machine reading was .09, and the inspector certified the machine as accurate.  Defendant's test was then performed on December 7, 1989.  On December 13, 1989, the logbook entry shows the inspector's certification that the machine was accurate; however, while the entry states that the machine was tested with a .10 simulator solution, it does not mention the actual results of the test that day.  This court determined that the inspector's failure to comply with the regulations and enter the certification test results in the logbook was merely procedural or administrative and did not have a substantial effect on the test itself.

Likewise, in the case at hand, defendant has failed to show that the test was not performed in accordance with the regulations.  Hence, there was no evidence of noncompliance presented at the rescission hearing, and defendant has failed to make a showing of noncompliance on appeal.

Defendant has cited 
People v. Kuntz
, 239 Ill. App. 3d 587, 607 N.E.2d 313 (1993), 
People v. Graney
, 234 Ill. App. 3d 497, 599 N.E.2d 574 (1992), and 
People v. Smolinski
, 235 Ill. App. 3d 1026, 601 N.E.2d 1385 (1992), to support his contention that a rescission should have been granted.  We disagree.  Each of the foregoing cases granted a rescission due to the State's failure to provide a proper foundation for the admission of the breath test result after the burden of proof had shifted to the State following the defendant's 
prima facie
 evidence.  In the instant case, the burden had not yet shifted to the State.

Defendant also claims that he made out a 
prima facie
 case for a rescission because Mumbower "left the room during the 20[-]minute observation period" in violation of section 510.60(a)(1) of Title 77 of the Administrative Code (77 Ill. Adm. Code §510.60(a)(1) (1999)).

Section 510.60(a)(1) of Title 77 of the Administrative Code states as follows:

"a) Continuous observation of the subject shall be conducted for at least 20 minutes prior to collection of the breath specimen, during which period the subject shall be deprived of alcohol or a foreign substance, i.e., must not have ingested alcohol, and shall not have regurgitated or vomited.

1) If the subject regurgitates or vomits during the observation (deprivation) period, the process shall be started over by having the individual rinse the oral cavity with water.  If the individual continues to regurgitate or vomit, blood and/or urine testing shall be considered."  77 Ill. Adm. Code §510.60(a)(1) (1999).

Mumbower testified at the hearing that he never saw defendant regurgitate or burp during the observation period and that he watched him the entire time.  Mumbower stated that he left the room very briefly, for less than five seconds, to put defendant's cellular telephone outside the door to the observation room, but he stated that he continued to watch him through a glass wall.  Hence, the testimony at the hearing shows that even if Mumbower exited the room, he "observed" defendant the entire time, as he was required by statute.

Defendant also claims that Mumbower could not remember the number of times that he asked defendant to perform the breathalyzer test.  Although defendant's argument is unclear, it appears that he is arguing that because he 
may
 have blown into the instrument twice, it was a violation of section 510.60(b) of Title 77 of the Administrative Code (77 Ill. Adm. Code §510.60(b) (1999)).  We disagree.

Section 510.60(b) of Title 77 of the Administrative Code states, "A breath test shall consist of only one breath 
analysis
."  (Emphasis added.)  77 Ill. Adm. Code §510.60(b) (1999).  Mumbower testified at the hearing that defendant 
may
 have blown into the breathalyzer twice, but he stated that he did not believe that defendant did so, because Mumbower did not have a receipt showing that defendant blew more than once or that defendant provided an insufficient sample.  Additionally, defendant never testified that he took multiple tests.  Even if defendant had blown into the breathalyzer twice, the Administrative Code states that the breath test shall consist of one breath 
analysis
.  77 Ill. Adm. Code §510.60(b) (1999).  Defendant has pointed to no section of the Administrative Code that states how many times a defendant can actually exhale into the instrument.  At worst, Mumbower's testimony shows that defendant may have given an insufficient sample before blowing into the instrument again.  An insufficient sample cannot produce an 
analysis
, because for an analysis to take place, a defendant must have given a sufficient sample.  We also note that courts have held that multiple attempts to provide breath tests with multiple insufficient samples are tantamount to a refusal to take the test, which triggers a harsher summary suspension period.  
E.g.
, 
People v. Bates
, 165 Ill. App. 3d 80, 82, 518 N.E.2d 628, 630 (1987).  If defendant's argument is taken to its logical extreme, all insufficient samples would become 
de facto
 refusals because a defendant could inadequately blow once into the instrument and then claim that he is not required to blow into the instrument again.  This is simply not the intent of the summary suspension laws.

Based on the foregoing analysis, defendant failed to make a 
prima facie
 case justifying the rescission of his statutory summary suspension.  Hence, the burden of proof never shifted to the State.  For these reasons, the circuit court properly denied the petition to rescind.  Because the circuit court's findings were not against the manifest weight of the evidence, we affirm.

Finally, defendant argues that the statutory police district, which permitted defendant's arrest, is unconstitutional.  We disagree.

Initially, we note that defendant frequently refers to extrajudicial facts and fails to supply appropriate citation to authority or the record, in violation of Supreme Court Rule 341(e)(7) (188  Ill. 2d R. 341(e)(7)).  Accordingly, we strike all of the portions of defendant's brief on pages 31 through 34, 36, 37, and 42 through 44 that fail to comply with Supreme Court Rule 341(e)(7).

At common law, municipal and county police officers had no authority to arrest a defendant outside the territorial limits of the political entity that appointed them to their office, except when an officer was in fresh pursuit of a suspected felon fleeing their jurisdiction.  See 
People v. Lahr
, 147 Ill. 2d 379, 382, 589 N.E.2d 539, 540 (1992).  Section 7-4-7 of the Municipal Code created a police district, which is defined as being a "territory which is embraced within the corporate limits of adjoining municipalities within any county in this State."  65 ILCS 5/7-4-7 (West 2000).  Section 7-4-8 defines police powers within the district as follows: "The police of any municipality in such a police district have full authority and power as peace officers and may go into any part of the district to exercise that authority and power.  For these purposes the mayor of any municipality in the district, and the chiefs of police therein, shall use the police forces under their control anywhere in the district."  65 ILCS 5/7-4-8 (West 2000).  Hence, the foregoing statutes abrogated, in a limited way, the common law rule.

The parties agreed in the circuit court that Mumbower, a patrol officer with the West City police department, arrested defendant in Benton for offenses that the officer saw committed in Benton.  The parties also agreed that the municipality of Benton adjoins the municipality of West City.  At the hearing on the petition to rescind the statutory summary suspension, the State opined that the arrest of defendant in Benton for an offense committed in Benton was authorized pursuant to sections 7-4-7 and 7-4-8 of the Municipal Code (65 ILCS 5/7-4-7, 7-4-8 (West 2000)) because the West City police officer was permitted to travel anywhere within the police district to effect an arrest.  We note, however, that defendant does not dispute the applicability of the foregoing statutory sections as a basis for authorizing what would otherwise be considered an extraterritorial arrest.  Defendant claims that the statutes are unconstitutional.  He makes the following arguments:  (1) the statutes violate due process and the equal protection clause of the federal constitution because the voters of Benton have been disenfranchised or their power to vote has been diluted by the statutory scheme, (2) the statutes violate the Illinois Constitution's guarantee of equal protection and its prohibition against special legislation, and (3) the statutes unlawfully alter the form of municipal government without a referendum and deprive the residents of Illinois communities of the right to choose their local officers, in violation of the Illinois Constitution.  We disagree.

A statute is presumed to be constitutional, and the party challenging it bears the burden of establishing its unconstitutionality.  
People v. Jung
, 192 Ill. 2d 1, 4, 733 N.E.2d 1256, 1258 (2000).  A reviewing court has a duty to construe a statute in a manner that upholds its constitutionality, if that can be reasonably done.  
People v. Fisher
, 184 Ill. 2d 441, 448, 705 N.E.2d 67, 71 (1998).  The objective of statutory construction is to give effect to the legislature's intent, and when presented with conflicting interpretations, courts will avoid a construction that creates constitutional difficulties, absurdity, or inconvenience.  
People v. Jamesson
, 329 Ill. App. 3d 446, 452, 768 N.E.2d 817, 823 (2002).

A review of the record shows that the City of Benton has a three-person board of fire and police commissioners.  Each of the board members is appointed by the mayor, who is an elected official.  Additionally, the chief of police is also appointed by the mayor.  All other promotions or appointments are made by the board.  In West City, the mayor, also an elected official, appoints the chief of police.  The patrol officers are also appointed by the mayor, with the advice and consent of the village board.  Hence, there is no direct electoral connection between the voting public of either Benton or West City and patrol officers.  Defendant claims, however, that this makes no difference because as long as there is an exercise of governmental power within one's jurisdiction that is controlled by a political entity over whom the voter cannot voice his or her opinion, the legitimacy of that exercise of power is invalidated under the constitution.  If defendant's theory is taken to its logical conclusion, the Illinois Supreme Court is in violation of the federal constitution because its interpretation of laws may directly affect a resident of Benton even though the majority of Illinois Supreme Court justices reside in other districts and are immune from the purview of Benton's voters' power.  See Ill. Const. 1970, art. VI, §3.  Nonetheless, defendant was arrested by an officer who exercised police power legitimatized by a state statute that was put into effect by a political structure, the Illinois legislature, the composition of which defendant can influence.  He can lobby his elected representative in that body to vote to repeal that legislation, because it is that representative who is ultimately politically accountable.  Defendant could also vote for a different candidate should he feel that his concerns have not been adequately addressed.

We also note that it appears that defendant is actually claiming that the police district statutory scheme has curtailed the powers of the 
elected officials
 in Benton, over whom he alleges some electoral control, to exercise supervisory responsibility over the actions of officers within the district.  Hence, in reality, defendant has no standing to raise this issue.   Defendant's next argument concerns special legislation.  More specifically, defendant claims that adjoined municipalities are treated differently than unincorporated areas that abut municipalities.  Defendant claims that this court must employ a strict scrutiny standard of review.  We disagree.

A statute will be held unconstitutional as special legislation only if it was enacted for reasons totally unrelated to the pursuit of a legitimate state goal.  If 
any
 set of facts can be reasonably conceived that justifies distinguishing the class to which the statute applies from the class to which the statute is inapplicable, then the General Assembly may constitutionally classify persons and objects for the purpose of legislative regulation or control and may enact laws applicable only to those persons or objects.  
Bilyk v. Chicago Transit Authority
, 125 Ill. 2d 230, 236, 531 N.E.2d 1, 3 (1988).  If a statute is based on a classification that relates to territorial and population differences, this is a permitted basis for legislative classification.  
Alexander v. City of Chicago
, 14 Ill. 2d 261, 266, 151 N.E.2d 319, 322 (1958).  The Illinois Supreme Court has found such a classification to be subject to the rational basis test.  Pursuant to the rational basis test, the statute will be upheld (1) where it is founded upon a rational difference of situation or condition existing in the persons or objects upon which the classification rests, and (2) where there is a reasonable basis for the classification in view of the objects and purposes to be accomplished.  
Du Bois v. Gibbons
, 2 Ill. 2d 392, 399, 118 N.E.2d 295, 300 (1954).  "There is always a presumption that the General Assembly and its committees acted conscientiously and did their duty in making a survey of the conditions prevailing in the municipalities of the State before enacting the classification legislation ***."  
Du Bois
, 2 Ill. 2d at 399, 118 N.E.2d at 300.

The first prong of the test is satisfied because there is a rational difference of situation.  Municipalities are densely organized centers of population and commerce, whereas unincorporated areas generally do not possess these characteristics.  The second prong is satisfied due to the fact that there is a legitimate need to allow concurrent police jurisdiction in order to facilitate law enforcement in municipalities, because more population and more commerce cause higher crime rates, whereas unincorporated areas are adequately served by the local sheriff's department and the state police.

Defendant also claims that sections 7-4-7 and 7-4-8 of the Municipal Code (65 ILCS 5/7-4-7, 7-4-8 (West 2000)) alter the form of government without a referendum and unlawfully deprive residents of the right to choose their local leaders.  Specifically, defendant states, "The Illinois legislature has 'altered the forms' of municipal government throughout the state, without referendum, and the Legislature has diminished the power of 'host municipals' and their executive branch and officers by appointing new city officers (peace officers from adjoining municipalities), with the power to assert unfettered police discretion and authority in the 'host municipality.' "  We disagree.

Defendant has failed to show that Benton's or West City's form of government has been altered.  This argument is basically defendant's first constitutional argument that his right as a voter has been diminished or extinguished by the legislature by its creation of a police district.  For the reasons set forth when we addressed defendant's first constitutional argument, this claim fails.  Additionally, defendant's argument appears to suggest that one should only be arrested by police officers from his or her own jurisdiction.  Defendant fails to comprehend that had he been arrested by a sheriff's deputy or an Illinois state trooper, the local commissioners in Benton would have had no greater power in choosing those officers than they had in choosing West City's police officers.

Due to our disposition of the foregoing issues, we need not address defendant's remaining contentions of error.

For the foregoing reasons, we affirm the circuit court's denial of defendant's petition to rescind his summary suspension.

Affirmed.

GOLDENHERSH and WELCH, JJ., concur.

NO. 5-01-0356

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the Circuit

) Court of Franklin County.

Plaintiff-Appellee, ) 

)

v. ) Nos. 01-DT-55, 01-DT-56,

)         01-TR-887, & 01-TR-888

EARL BARWIG, ) 

) Honorable Leo T. Desmond, 

Defendant-Appellant. ) Judge, presiding.  

___________________________________________________________________________

Opinion Filed
: October 9, 2002

___________________________________________________________________________

Justices
: Honorable Gordon E. Maag, P.J.

Honorable Richard P. Goldenhersh, J., and

Honorable Thomas M. Welch, J.,

Concur

___________________________________________________________________________

Attorney
 Evan L. Owens, 106 West Washington Street, P.O. Box 610,

for
 Benton, IL  62812

Appellant
 

___________________________________________________________________________

Attorneys
 Hon. William Richardson, Franklin County State's Attorney, 202 

for
 W. Main Street, Benton, IL  62812; Norbert J. Goetten, Director, 

Appellee
 Stephen E. Norris, Deputy Director, Patrick D. Daly, Staff Attorney,

Office of the State's Attorneys Appellate Prosecutor, Route 15 East,

P.O. Box 2249, Mt. Vernon, IL  62864

___________________________________________________________________________

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 10/09/02.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.